**UNITED STATES of America,**
**Appellee,**

v.

**Jesus DEJESUS, Defendant–Appellant.**

No. 01–1479.

United States Court of Appeals,
Second Circuit.

Jan. 28, 2003.

B. Alan Seidler, Nyack, N.Y., for Defendant–Appellant.

Adam H. Schuman, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Cecil C. Scott, Assistant United States Attorney, on the brief), New York, N.Y., for Appellee.

PRESENT: NEWMAN, KATZMANN, and RAGGI, Circuit Judges.

Summary Order

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 28th day of January, two thousand three.

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York (Block, *J.*), it is hereby

ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendant-appellant Jesus DeJesus appeals his conviction and sentence for conspiring to possess and possessing with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846.

DeJesus worked as a fleet service clerk for American Airlines at Miami Interna-

tional Airport, where his responsibilities included loading and unloading luggage from airplanes and guiding planes in and out of the gates. Fleet services clerks, like DeJesus, were issued identification cards that granted them access to their work areas without having to pass through security checkpoints. DeJesus also received flight benefits which permitted him to fly standby on American Airlines at a substantially reduced price. The government's evidence established that, over a three month period in 1998, DeJesus and other American Airlines employees participated in a marijuana smuggling operation in which they would transport drugs from Miami to New York City and Raleigh, North Carolina.

DeJesus was arrested on August 25, 1999. Upon waiving his *Miranda* rights, DeJesus admitted to participating in six drug-smuggling trips and to personally carrying the illegal drugs during four of these trips. DeJesus also admitted that he was paid $300 for the trips and that he would arrange for the drugs to be picked up from a hotel upon arrival. At trial, however, DeJesus testified on his own behalf and denied any involvement in the drug smuggling operation.

On May 25, 2000, a jury found DeJesus guilty of conspiring to possess and distribute marijuana and of possessing and distributing marijuana. DeJesus, acting through his trial attorney, moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. DeJesus, acting *pro se* and *ex parte,* later asserted that his trial counsel had rendered ineffective assistance and sought a new trial. DeJesus's trial counsel submitted a letter to the court responding to DeJesus's allegations. Treating DeJesus's ineffective assistance argument as a Rule 33 motion for a new trial, the District Court denied the motion upon finding no deficiencies in his trial counsel's representation.

At sentencing, DeJesus, through new counsel, moved for a downward departure pursuant to U.S.S.G. §§ 5H1.6 and 5K2.0 on grounds of "extraordinary family circumstances." The District Court denied this departure and sentenced DeJesus to a prison term of seventy months, four years of supervised release, and a $200 special assessment.

On appeal, DeJesus argues 1) the evidence was insufficient to support his conviction; 2) he was denied effective assistance of trial counsel; and 3) the District Court abused its discretion in failing to depart downwardly for family circumstances.

In arguing that the evidence supporting his conviction was insufficient, DeJesus faces a "heavy burden," as "we must consider the evidence in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998). This burden is met only if "no rational trier of fact could have found the essential elements of the crime." *United States v. Libera,* 989 F.2d 596, 601 (2d Cir.1993); *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Deference to the jury is particularly critical where, as here, we review a conspiracy. "[A] conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *United States v. Pitre,* 960 F.2d 1112, 1121 (2d Cir.1992) (quoting *United States v. Provenzano,* 615 F.2d 37, 45 (2d Cir.1980)). Because of this secretive nature, the government need not "present evidence of a formal or express agreement, but may rely on proof that the parties have a tacit understanding to en-

gage in the offense." *United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994). Once the existence of a conspiracy has been established, "evidence sufficient to link another defendant with it need not be overwhelming and it may be circumstantial in nature." *United States v. Desena,* 260 F.3d 150, 154 (2d Cir.2001).

■ With these precepts in mind, we turn to the government's evidence. Two conspirators in the criminal scheme described their marijuana smuggling trips with DeJesus and detailed the steps they would take to circumvent the airport's security checkpoints. These conspirators also testified to the specifics of one of their trips to New York City with DeJesus to transport marijuana, testimony which was corroborated by the hotel bill and telephone records. Two law enforcement officers testified to DeJesus's oral confession obtained in an interview following his arrest, where he admitted to participating in six drug smuggling trips and to carrying the suitcases filled with marijuana himself on four of these occasions. The law enforcement officers testified that DeJesus admitted that he was paid for these trips and that he would make telephone calls to arrange for the drugs to be picked up.

Assessing this evidence in its totality, as we must, *see United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000), this evidence easily allowed a rational trier of fact to find DeJesus guilty beyond a reasonable doubt. The testimony of DeJesus's coconspirators and the law enforcement officers allowed the jury to infer that DeJesus "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Diaz,* 176 F.3d 52, 97 (2d Cir. 1999); *see United States v. Nusraty,* 867 F.2d 759, 763 (2d Cir.1989) ("[T]o be guilty of conspiracy the defendant must at least have had knowledge that a common endeavor existed."). The evidence therefore supported DeJesus's conviction of violating 21 U.S.C. § 846. Further, DeJesus's statements to the law enforcement officials established that he actually possessed and distributed marijuana, in violation of 21 U.S.C. § 841.

We apply the familiar two-prong *Strickland* test to DeJesus's allegation that he was denied effective assistance of counsel. To prevail, DeJesus must show 1) that the conduct of his trial counsel fell below "an objective standard of reasonableness" based on "prevailing professional norms," and 2) "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998) (per curiam). When assessing counsel's performance, we " 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy." *Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). We do not use hindsight to second-guess sound tactical decisions made at trial. *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999). Actions or omissions of counsel that might be considered "sound trial strategy" do not constitute ineffective assistance, even if they turn out to be unsuccessful. *United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000); *see Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (noting that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable").

■ DeJesus's sole specific allegation of deficient trial performance is his attorney's failure to call character witnesses on his behalf, even though DeJesus requested that she do so and provided her with contact information for potential witnesses. A trial counsel's "decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999). Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed. *Pavel v. Hollins*, 261 F.3d 210, 217 (2d Cir.2001); *see United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997) ("[T]he tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."). Here, DeJesus's trial counsel's decision not to call a character witness was grounded in the strategy of preventing the prosecution from attacking DeJesus's character. If DeJesus offered testimony of his good character, the government would have been able to contradict that impression with evidence of DeJesus's involvement in multiple thefts. Indeed, DeJesus's trial counsel explained in her letter to the District Court that she did not call character witnesses in response to the court's pre-trial ruling that the government could not introduce evidence that DeJesus participated in previous thefts with his co-conspirators unless the defense first opened the door. DeJesus's trial counsel further contended that DeJesus "agreed that he did not want the testimony regarding the thefts to come in and therefore, agreed with counsel's recommendation that he forgo introducing evidence of his good character."

■ DeJesus also argues that his trial counsel misrepresented the strength of the government's case and urged him not to plead guilty. His counsel also specifically denied this allegation in her letter to the District Court. The remainder of DeJesus's allegations of ineffective assistance primarily amount to rather general assertions that his attorney was inadequately prepared for trial and lacked experience trying federal cases. DeJesus's trial counsel refuted these allegations as well, noting her experience in trying federal criminal cases and explaining her extensive trial preparation in this case.

■ In rejecting DeJesus's allegations, the District Court decided to credit his trial counsel's written response, finding that the submission was "very specific and I credit it. . . ." In the context of a habeas challenge to the effective assistance of trial counsel, we recently acknowledged a district court's discretion to reject Sixth Amendment claims without full evidentiary hearings where counsel submitted detailed, credible descriptions of the pertinent events. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir.2001). The same logic pertains here. Because it acted well within its discretion in crediting trial counsel's detailed refutation of DeJesus's ineffectiveness claims, the District Court did not err in concluding that counsel's representation had not been objectively unreasonable.

■ Further, even if counsel's performance had fallen below an objective standard of reasonableness, *Strickland*'s prejudice prong would not be satisfied. As discussed earlier, the government's evidence against DeJesus was very strong. Even with the deficiencies alleged by DeJesus, there is not a "reasonable probability" that the result would have different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ DeJesus argues that the District Court abused its discretion in denying his

request for a downward departure on the basis of family circumstances. At sentencing, DeJesus argued that a downward departure was warranted because of his difficult childhood relationship with his father and because his wife, who had miscarried a year before DeJesus's criminal conduct, was still undergoing psychiatric counseling. The government opposed this departure motion, noting that the hardships identified were not sufficiently extraordinary to warrant a departure.

"Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S. Sentencing Guidelines Manual § 5H1.6 (2000). An exception to this general prohibition, however, may occur in extraordinary circumstances if the district court determines that the case "fall[s] outside the heartland of cases in the Guideline." *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "Departures from the prescribed Guidelines ranges are allowed only in cases that are unusual." *United States v. Sentamu,* 212 F.3d 127, 134 (2d Cir.2000).

A decision not to depart downwardly lies within the sentencing court's discretion and is normally not reviewable on appeal. *United States v. Walker,* 191 F.3d 326, 338 (2d Cir.1999). We review a sentencing court's refusal to grant a downward departure only "if it is shown that a violation of law occurred, the Guidelines were misapplied, or the refusal to depart was based on the court's mistaken understanding that it was not authorized to depart." *United States v. Cornielle,* 171 F.3d 748, 754 (2d Cir.1999); *see United States v. Ventrilla,* 233 F.3d 166, 168–69 (2d Cir.2000).

We find none of these exceptions applicable here. The record suggests that the District Court considered its authority to depart, and decided not to exercise it. The District Court heard arguments from both sides on whether DeJesus's family circumstances fell outside the heartland of cases contemplated by the Guidelines so as to warrant a departure. In rejecting the departure motion, the District Court explained that if the court "believed that downward departure was appropriate, in the competent exercise of [the court's] discretion," the court would have departed. The record therefore reflects that the District Court understood that it was within its authority to depart if appropriate, but chose not to. Accordingly, we decline to disturb the court's decision not to depart downwardly.

We have reviewed all of the defendant-appellant's other arguments and affirm the judgment of the District Court.