

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-9-2003

# Philson v. Barbo

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3658

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Philson v. Barbo" (2003). *2003 Decisions.* Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3658

PATRICE PHILSON, a/k/a JUSTICE ALLAH
<u>Appellant</u>

v.

JAMES BARBO, Administrator, Northern States Prison; and
THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

Patrice Philson,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 98-cv-02249 )
District Judge:   Honorable William H. Walls
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 3, 2003
Before:   RENDELL, WEIS and GARTH, <u>Circuit</u> <u>Judges</u>.
Filed: October 9, 2003
_____

<u>OPINION</u>
_____

WEIS, <u>Circuit Judge</u>.

In 1990, a jury in the Superior Court of New Jersey convicted petitioner

Philson of murder. After direct appeal and post-conviction proceedings in state court were unsuccessful, he filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the District Court of New Jersey.

The District Court held an evidentiary hearing and denied the petition. We granted a certificate of appealability limiting the issue, however, to whether Philson's trial lawyer's failure to interview certain witnesses constituted an inadequate defense.

The murder occurred about 2:30 a.m. on a street in downtown Newark, New Jersey. The victim had driven his automobile to the scene to collect some money. He was accompanied by two teenage girls, Aisha Jones and Erica Dawson. As the victim returned from his collection errand, he was accosted by three individuals, petitioner Philson, Hassan Carter and Damian Wise. The victim was shot while resisting an apparent robbery attempt, and died at the scene.

Philson and Carter were both indicted for the murder, but Carter was acquitted at trial. Philson retained John Vantuno, a former prosecutor and an experienced defense attorney, for representation at trial.

Both of the teenage girls, Jones and Dawson, testified that they saw Philson shoot the victim. In addition, witness Glenn Copeland said that he heard an individual threaten the victim shortly before the shot was fired. In the courtroom, Copeland identified Philson as that person.

There were numerous inconsistencies in the evidence at trial. Witnesses

2

differed as to whether the shooter wore a brown or green jacket and whether Philson and Wise had switched jackets. Wise testified that Philson had shot the victim and soon afterwards they encountered each other in an apartment near the scene occupied by Carolyn Moore and Loretta Barber. Wise said that Philson made damaging, inculpatory statements at that time. In their statements to the police, Barber and Moore denied that Philson and Wise had actually entered their apartment.

One and one-half years after the trial, Cawana Dawson submitted an affidavit disputing her sister Erica's alleged prior acquaintanceship with Philson and her identification of him as the person who had shot the victim.

In his post-trial proceedings, Philson contended that his attorney Vantuno was ineffective in failing to interview Cawana Dawson and call her as a witness. In addition, Philson challenged his lawyer's failure to call Moore and Barber. He asserts that they would have testified that they had refused him entry into their apartment and, thus, would have contradicted Wise's allegations about Philson's inculpatory statements.

Additionally, another witness, Quintina Holden, was not called. In her statement to the police she related that she had seen two girls take the coat from the victim after he was shot. She had not, however, witnessed the actual shooting.

These contentions were raised at the state post-conviction proceeding. After oral argument and a thorough review of the record, the state judge concluded that trial counsel had satisfied the minimum standards for effective assistance of counsel. The

judge concluded that, "[i]t was the large corpus of insurmountable and incontrovertible evidence presented at trial, which included several eyewitnesses to the murder, which resulted in the defendant's conviction and [it] was not due to defense counsel's performance." Further, the judge found that "defense counsel could have reasonably chosen not to explore the specific avenues of examination proposed by [Philson] for fear that further inquiry might have exposed information detrimental to the defense." The state court's denial of Philson's post-conviction relief was affirmed on appeal. The New Jersey Supreme Court denied certification.

At the conclusion of Vantuno's testimony and extended argument in the District Court, the judge announced his decision from the bench. Assessing the record in accordance with Strickland v. Washington, 466 U.S. 668 (1984), the district judge stated, "I don't believe Vantuno's representation fell below an objective standard of reasonableness . . . [Even] assuming that it did, certainly the outcome would not have been different in all likelihood . . .."

The court observed that Mr. Vantuno strongly denied ever hearing Philson speak of calling Cawana Dawson as a witness. The judge found, "I do not believe the name [of Cawana] was given to [Vantuno] by [Philson] in the context of being called as a defense witness." Even assuming that Philson was correct in stating that he gave Cawana's name to his lawyer, the judge noted that she had another sister who might have been associated with Philson. In any event, the eyewitness testimony of the two teenage

4

girls would not have been weakened to the extent of producing a different result at trial.

With respect to Barber and Moore, the judge noted that their testimony might have cast doubt on Wise's statements, but it would not have affected that of the two girls. Moreover, Vantuno said that he did not call Barber and Moore because their testimony would have provided the state with evidence of Philson's flight from the scene of the crime.

The district judge also discounted any value to the alleged knowledge of Quintina Holden. She did not see the shooting and her sighting of two girls taking a coat from the victim as he lay on the street would not have affected Jones and Dawson's testimony about the murder.

Our review of state habeas corpus claims is limited by the A.E.D.P.A., 28 U.S.C. § 2254. A petition may not be granted on claims adjudicated on the merits in state court unless the decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d). As the Supreme Court explained "[t]he state court's application must have been 'objectively unreasonable.'" Wiggins v. Smith, 123 S. Ct. 2527, 2534 (2003).

Strickland v. Washington, 466 U.S. 668 (1984) provides the legal standard applicable to claims of ineffective counsel. First, counsel's performance must have been

5

deficient and, second, must have prejudiced the defense. As the Court said, "[s]tragetic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 690-91.

The state court followed federal law as articulated in the Strickland opinion. The issue here, therefore, is whether the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2).

The state judge performed a very thorough review of the trial record after hearing extensive argument by counsel in the post-conviction proceeding. The only weakness in the case at that point was the absence of testimony from Vantuno. That deficiency, however, was remedied in the district court hearing where Mr. Vantuno testified at length on his conduct of the defense.

We have reviewed this case very carefully and conclude that the District Court did not err in dismissing the petition. Philson focused his challenge on three areas where counsel was allegedly ineffective and we will comment on each in turn.

6

First, Philson contends that he told Vantuno that Cawana Dawson should have been called as a witness. Vantuno denied that allegation and the district judge accepted that disavowal, "in the context of being called as a defense witness." Nonetheless, even assuming that Philson's allegation is correct, we feel that Cawana's impeaching testimony would not have been enough to affect the result.

We have examined the affidavit of Cawana Dawson and are inclined to view it with some skepticism. The affidavit was not filed until one and one-half years after the conviction without any explanation for the delay. Essentially, it states that the two teenagers were unsure of the identity of the shooter and whether he wore a brown or green jacket. That discrepancy, while significant, was already revealed in the statements given to the police, and was explored during the testimony at trial.

Moreover, the affidavit accused Erica of misstating the fact that she had known Philson because he "used to go with my sister Cawana." The affidavit is incorrect in this respect because at trial Erica did not mention Cawana at all. Rather, it was Aisha Jones who testified that she had known Philson because he "used to go with Felicia, . . . Erica's sister" – not Cawana. A crucial point of the affidavit, therefore, was incorrect and undermines much of Cawana's accusations that Erica had lied on the witness stand. Although Jones' testimony varied from that which she gave before the Grand Jury, where she linked Cawana rather than Felicia Dawson with Philson, it was the trial testimony which Cawana specifically challenged. We conclude that, even if called, Cawana's

7

impeaching testimony would not have affected the result of the trial.

Philson also criticizes the decision not to call Barber and Moore to the stand. In the course of discovery, Vantuno had read the statements they had given to the police. Both statements allege that Philson and Wise came to their apartment in the early morning hours but had been refused entry because of the lateness of the hour. Philson contends that their testimony would have undermined Wise's damaging allegations of the petitioner's inculpatory statements made in that apartment.

As a matter of trial strategy, Vantuno decided not to call these women as witnesses because their testimony would have supplied evidence of Philson's flight. Giving appropriate deference to counsel's judgment in light of all the circumstances here, we cannot say he was ineffective in his strategic decision. Moreover, as the district judge pointed out, the testimony of these two women "would not have knocked out [Aisha] Jones and Erica Dawson's eyewitness testimony."

The third alleged dereliction of counsel was his failure to call Quintina Holden. While Ms. Holden did supply police with information about events immediately following the shooting, she could not furnish any evidence about the perpetrator because it was the shot that alerted her and caused her to go from her house to the scene. The fact that she saw two girls take the victim's coat and flee the scene would not have aided the defense. That evidence would have merely reflected upon the character of the two

8

teenagers. It would not, as the district judge noted, have "undermine[d] the basic believability of their assertion that they saw petitioner shoot the victim." According to the district judge, the allegation that such testimony would weaken their identification of the shooter "makes no professional sense to me and I don't buy it both as a lawyer and as a judge." We cannot disagree with that assessment.

The trial of this case was marked by a number of inconsistencies in the testimony of witnesses who were at the scene. These contradictions were explored by counsel at length and were submitted to the jury that had the duty to resolve them.

After our study of the record, we are satisfied that the district judge conducted a comprehensive hearing, giving petitioner and his counsel every opportunity to present the case. We note that the district judge even permitted Philson, acting pro se, to argue personally in addition to counsel's comprehensive presentation.

We find no reversible error and, accordingly, the judgment of the District Court will be affirmed.

_____

TO THE CLERK:


Please file the foregoing Opinion.



/s/ Joseph F. Weis, Jr.___
United States Circuit Judge


9