

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2005

# Henderson v. DiGuglielmo

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3256

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Henderson v. DiGuglielmo" (2005). *2005 Decisions.* Paper 883.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/883

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3256

CLARK HENDERSON,
                                    Appellant

v.

*DAVID DiGUGLIELMO;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

(*Substituted pursuant to Rule 43(c), Fed. R. App. P.)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-02437
(Honorable Anita B. Brody)

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2005

Before:  SCIRICA, *Chief Judge*, ROTH and FUENTES, *Circuit Judges*

(Filed July 8, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Clark Henderson petitions for writ of habeas corpus under 28 U.S.C. § 2254 on the basis of ineffective assistance of trial counsel, jury tampering, and juror misconduct. The District Court, adopting the Magistrate Judge's report and recommendation, dismissed the petition. We will affirm.

## I. BACKGROUND

Following an altercation in South Philadelphia that left two men dead and another seriously injured, Petitioner was tried before a jury in the Philadelphia County Court of Common Pleas. On August 17, 1993, following a three-week multi-defendant jury trial,[1] Henderson was convicted of first-degree murder, third-degree murder, aggravated assault, criminal conspiracy, and possession of an instrument of a crime. He was sentenced to life in prison. The Superior Court of Pennsylvania affirmed the conviction and sentence on direct review, *Commonwealth v. Henderson*, 668 A.2d 1191 (Pa. Super. Ct. 1995), and the state Supreme Court denied *allocatur*, 675 A.2d 1244 (Pa. 1996).

On April 17, 1997, Petitioner filed for collateral state relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, alleging, *inter alia*, ineffective assistance based on trial counsel's failure to call exculpatory witnesses.[2] The

---

[1]Henderson was convicted following the second trial of the defendants. The first trial ended in the granting of a defense motion for a mistrial.

[2]The parties contest whether Petitioner also raised the issues of jury tampering and jury misconduct in the collateral state proceeding. We return to this question *infra*.

2

PCRA court held an evidentiary hearing and dismissed the petition on the merits. The state Superior Court affirmed, *Commonwealth v. Henderson*, 747 A.2d 412 (Pa. Super. Ct. Sept. 22, 1999), and the Pennsylvania Supreme Court denied *allocatur*, 751 A.2d 186 (Pa. Feb. 10, 2000).

On May 6, 2000, Henderson filed a timely *pro se* habeas petition under 28 U.S.C. § 2254. In his initial petition, Henderson alleged ineffective assistance of counsel. He claimed his trial counsel was ineffective for failure to call four exculpatory witnesses. By leave of court, he filed an amended *pro se* petition on July 10, 2000, alleging ineffective assistance of counsel and denial of due process due to jury tampering and juror misconduct. The District Court appointed counsel. On November 22, 2002, the Magistrate Judge granted leave to file a counseled amendment to petitioner's amended petition. Henderson filed this amended petition on April 2, 2001, alleging ineffective assistance of counsel for failure to call exculpatory witnesses, and denial of due process and a fair trial due to jury tampering and misconduct.

The District Court referred Henderson's petition to a Magistrate Judge who issued a Report and Recommendation ("R&R") recommending denial of Henderson's petition. The District Court adopted the R&R in its entirety, and on June 10, 2003, denied Henderson's petition.

We granted a Certificate of Appealability on three issues: first, whether Henderson's attorney was ineffective for failure to call four exculpatory witnesses;

3

second, whether the District Court erred in allowing petitioner to amend his petition following expiration of the AEDPA statute of limitations; and third, whether the District Court properly found that the state court decision regarding the jury tampering/misconduct claim was neither unreasonable nor contrary to federal law.

The District Court had jurisdiction under 28 U.S.C. § 2254. Appellate jurisdiction arises under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. Our review is plenary. *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002) (citing *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)).

## II. AEDPA STANDARDS

Section 2254 allows federal courts to grant habeas corpus relief to a prisoner "in custody pursuant to the judgment of a State court" where his custody violates the Constitution of the United States of America. 28 U.S.C. § 2254(a). Because Henderson's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996[3] ("AEDPA"), P.L. 104-132, 110 Stat. 1214, he is entitled to habeas relief only where the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

---

[3]The AEDPA governs § 2254 habeas petitions filed on or after April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 327 (1997).

4

A state court decision may be "contrary to" clearly established federal law in one of two ways. First, a state court decision is contrary to clearly established precedent where "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). Second, a state court decision will be "contrary to" the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Id.* at 406. A state court decision involves an "unreasonable application" of federal law, on the other hand, where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

Habeas relief will also be granted where a state court decision is "based on an unreasonable determination of the facts." Under the AEDPA, however, factual determinations made by the state court are accorded a presumption of correctness: "a federal court must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Del. Correctional Ctr.,* 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). To prevail under this "unreasonable determination" prong, therefore, petitioner must demonstrate by clear and convincing evidence that the state court's determination of the facts was objectively unreasonable in light of the evidence available. Mere disagreement with the state court– or even a

5

showing of erroneous factfinding by the state court– will be insufficient to warrant relief, provided that the state court acted reasonably. *See Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004); *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003).

## III. TIMELINESS

The parties agree Henderson's initial habeas petition was timely filed under AEDPA's one-year statute of limitations.[4] Henderson's amended habeas petition, however– in which he first asserted jury tampering and juror misconduct as grounds for relief– was filed after the AEDPA statute of limitations had expired. Although Henderson's amended and second amended petitions were filed with the District Court's permission, the government argues the District Court erred in granting leave to amend. By allowing Henderson to amend his petition to include new claims after the one-year limitation period had ended, the government argues, the District Court enabled Henderson to circumvent the requirements of AEDPA.

---

[4]Henderson's conviction became final on July 17, 1996, upon expiration of his time to seek direct review in the United States Supreme Court by writ of *certiorari* (90 days). *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999). The one-year statute of limitations began to run on July 18, 1996, and continued running until petitioner filed his PCRA petition on April 17, 1997, at which time 274 days had elapsed. The statute of limitations was then tolled until February 10, 2000, during the pendency of his state collateral attack. *See* 28 U.S.C. § 2244(d)(2). Between February 10, 2000, and May 6, 2000, when petitioner filed his § 2254 habeas petition in federal court, 86 days elapsed. Petitioner's initial habeas petition, therefore, is timely under AEDPA's one-year statute of limitations.

6

Under AEDPA, a one year limitations period applies to habeas petitions brought by persons in custody pursuant to an order of a state court. 28 U.S.C. § 2244(d). Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), amendment may not be used to evade the strictures of AEDPA. *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999).

In *Duffus*, the petitioner filed a timely petition for habeas corpus in which he raised three claims. *Id.* at 335. Six months later, following the expiration of AEDPA's one year limitations period, Duffus sought to amend his original habeas petition by adding a fourth claim. *Id.* We held that although the District Court "could have permitted an amendment to clarify a claim initially made," Duffus' proposed amendment would have asserted a "completely new" claim. *Id.* at 337. Because the claim was "completely new," it did not "relate back" to his original petition under Fed. R. Civ. P. 15(c) and thus could not be deemed timely. *Id.* Had the District Court granted leave to amend, we noted, "it would have frustrated the intent of Congress that claims under 28 U.S.C. § 2255 be advanced within one year after a judgment of conviction becomes final." *Id.*

We returned to this issue one year later in *United States v. Thomas*, 221 F.3d 430 (3d Cir. 2000), where we elaborated upon the intersection of AEDPA's limitations period and "relation back" under Rule 15(c). In *Thomas*, petitioner filed a timely § 2255 petition. After the statute of limitations had expired, he sought leave to amend the petition to allege facts in support of his previously asserted claims. *Id.* at 432. Reluctant

7

to "eliminate or compromise what will likely be a prisoner's only opportunity to collaterally challenge his sentence by refusing to even consider whether a proposed amendment relates back to his or her petition," *id.* at 436, we remanded for the District Court to consider whether Thomas' petition related back under Rule 15(c):

> Rule 15(c)(2) applies to § 2255 petitions insofar as a District Court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, so long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief.

*Id.*

Henderson's amended and second amended petitions involve "completely new" claims. In his initial petition he alleged ineffective assistance of counsel. In his amended petitions, he added claims for denial of due process due to jury tampering and juror misconduct. These claims are factually and legally distinct from Henderson's original claim for ineffective assistance of counsel. Under other circumstances, we would remand to the District Court for a finding as to whether newly alleged facts and claims "relate back" under Rule 15(c). *See Thomas*, 221 F.3d at 436-37. But it is clear from the record that a claim for denial of due process due to jury tampering, on the one hand, and a claim for ineffective assistance of counsel for failure to call four exculpatory witnesses, on the

8

other, are unrelated.  Thus no remand is necessary.  Henderson's due process claims are untimely under *Thomas* and will be dismissed.[5]

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his timely-filed claim, Henderson alleges his trial counsel was ineffective for failing to call four potentially exculpatory witnesses.  Henderson contends each of these

---

[5]Even if Henderson were entitled to equitable tolling, we find no merit to either of his jury claims (jury tampering and juror misconduct).

One juror was followed by an unidentified individual during trial.  She was ultimately approached and advised to "make the right decision for [her] own good," an encounter she later discussed with two co-jurors.  The court excused all three jurors, and denied defendant's motion for a mistrial only after having individually colloquied each remaining juror and assuring their ability to be fair and impartial.  Although private communications with jurors are "presumptively prejudicial," *Remmer v. United States*, 347 U.S. 227, 229 (1954), this presumption is not conclusive.  *United States v. Vega*, 285 F.3d 256, 266 (3d Cir. 2002).  The court determined no juror bias existed, noting that the remaining jurors had no knowledge of any improper communication.  State court findings of fact are presumed correct, 28 U.S.C. § 2254(e)(1), and Henderson has not introduced clear and convincing evidence to the contrary.  We believe the state court effected a reasonable application of federal law when, having interviewed each remaining juror and made a finding of impartiality, it denied Henderson's motion for a mistrial.

Henderson also alleges deprivation of a fair trial due to juror misconduct, arising from a juror's alleged solicitation of a bribe from one of Henderson's co-defendants.  Following trial, an extensive grand jury investigation concluded that no jury misconduct had occurred.  The trial court then conducted a post-verdict hearing and denied Henderson's motion for a mistrial.  The Superior Court– crediting the trial court's credibility determinations– affirmed its denial of a mistrial on jury tampering grounds, reasoning that "[t]he evidence presented abundantly supports the court's finding that the instant allegation of jury tampering is meritless."  The trial court had the benefit of the transcript of the grand jury investigation and its first-hand observations of the witnesses' demeanor and credibility.  Petitioner has not offered clear and convincing evidence to the contrary, thus we presume the state court's factual findings correct.  Accordingly, we find the state court's factual determination that no juror misconduct occurred to be reasonable and not contrary to any federal law.

9

four witnesses were willing and able to testify that at the time of the crime Henderson was a block away from the gunfight, carrying his daughter and talking to friends. Henderson also alleges that he provided his attorney with the names of these four witnesses well before trial. This ineffectiveness claim is properly before this court.[6]

The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland,* in order to merit habeas relief based on a claim of ineffective assistance of counsel petitioner must demonstrate that: (1) his attorney's performance was deficient, and (2) he was prejudiced by this deficiency. *Strickland,* 466 U.S. at 687. To demonstrate deficiency, petitioner must establish that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. To overcome the presumption that counsel was effective, petitioner bears the burden of establishing that counsel's performance was unreasonable under "prevailing professional

---

[6]Section 2254 prohibits a federal court from reviewing a habeas petition unless all state court remedies have been exhausted. 28 U.S.C. § 2254(b)(1)(A). Petitioner presented the factual and legal substance of his ineffectiveness claim to the highest available state court when he petitioned the Pennsylvania Supreme Court for *allocatur* review. *Commonwealth v. Henderson*, 751 A.2d 186 (Pa. 2000). His state court remedies, therefore, have been exhausted and his claims are properly before this court on habeas review. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 846-48 (1999) (holding the exhaustion requirement requires a petitioner to have sought discretionary review where available); *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999) (citing *Anderson v. Harless,* 459 U.S. 4, 6 (1982)) (holding that a petitioner "must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted" in order to have "fairly presented" a claim for the purposes of the exhaustion requirement).

10

norms." *Id.* at 688; *see also Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir.1999) (citing

*Strickland,* 466 U.S. at 689) ("In evaluating counsel's performance, we are 'highly

deferential' and 'indulge a strong presumption' that, under the circumstances, counsel's

challenged actions 'might be considered sound . . . strategy."). To demonstrate

prejudice, petitioner must demonstrate that "counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S.

at 687. Ultimately, the "benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result." *Id.*

Having identified the relevant federal standard, we next ask whether the Superior

Court's decision was "contrary to" the *Strickland* standard, involved an "unreasonable

application" of *Strickland*, or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented." 28 U.S.C. 2254(d)(1). The

PCRA Court determined counsel's decision not to call these witnesses at trial was

reasonable, and the Superior Court affirmed. The Superior Court's analysis follows:

> The . . . failure to call the witnesses in question was part of a
> reasonable trial strategy, and thus may not be the basis of an ineffective
> assistance of counsel claim. *See* [*Commonwealth*] *v. Kimball*, 555 Pa.
> [299], 312 [(1999)] (requiring PCRA petitioner to show 'that counsel had
> no reasonable strategic basis for his or her action or inaction"). With
> respect to three of the four witnesses, Craig Elder, Sandra Robinson, and
> Monica Rhodes, the record supports this conclusion. All three would have
> placed [Petitioner] at the scene of the crime. However, the record from
> [Petitioner's] original trial shows that counsel offered evidence to the effect
> that [Petitioner] was never identified as having been at the scene of the

11

murders. It is certainly a reasonable trial strategy to attempt to show that a criminal defendant was not present at the scene of the crime. Obviously, a defendant employing such a strategy should not present any witnesses who may be able to place him at the scene. Since trial counsel was acting reasonably in failing to call the three witnesses in question, he cannot be found to have been ineffective.

[Petitioner's] claim also fails with respect to the fourth witness, James Brooks, but for different reasons. There is no indication that this witness would have placed [Petitioner] at the scene of the crime. However, there is also no indication that his testimony would have been particularly helpful to [Petitioner]. The record does not clearly show that this witness even knew who [Petitioner] was at the time of the incident. Moreover, the witness had ducked behind a wall when the shooting began, and therefore did not see much of what took place. We find that [Petitioner] has not proven that this witness' testimony was 'necessary to avoid prejudice.' *Holland*, 727 A.2d at 566-67. Therefore, we find that it was proper for the PCRA court to dismiss [Petitioner's] argument that trial counsel was ineffective in failing to call the witness in question.

PCRA Super Ct. Opinion (citations to the record omitted).

The Superior Court applied *Commonwealth v. Kimball*, 555 Pa. 299 (1999). Both this court and the Pennsylvania Supreme Court have held that the ineffective assistance standard set forth by the Pennsylvania courts is materially identical to that articulated in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (finding that the Pennsylvania standard is "not contrary to" the *Strickland* test); *Commonwealth v. Pierce*, 515 Pa. 153, 161 (1987) (holding that Pennsylvania's ineffectiveness standard and the *Strickland* test "constitute the same rule"). Given that the Superior Court applied the correct standard, its opinion is not "contrary to" federal law.

Nor does the Superior Court's analysis constitute an unreasonable application of federal law. This prong requires us to inquire "whether the Pennsylvania courts'

12

application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonable be justified under *Strickland*." *Werts*, 228 F.3d at 204.

In this case, the Superior Court's analysis can be justified under *Strickland*. Counsel's failure to call a witness "is precisely the sort of strategic trial decision that *Strickland* protects from second-guessing." *Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989). The Superior Court concluded trial counsel declined to place these witnesses on the stand because their testimony would conflict with defense strategy– that is, they would place him near the scene of the crime, whereas trial counsel was attempting to prove that Henderson was not in the area at the time of the gunfight. We find this factual determination credible, and petitioner has not presented clear and convincing evidence to the contrary.

Counsel's decision not to introduce testimony potentially in conflict with the central defense strategy is not unreasonable. *See, e.g., LaFrank v. Rowley,* 340 F.3d 685 (8th Cir. 2003) (counsel's alleged ineffectiveness for failure to call a witness was evaluated under *Strickland* and, because it was a "matter of trial strategy," found to be reasonable); *Castillo v. Matesanz,* 348 F.3d 1, 15 (1st Cir. 2003) (affirming district court's determination that trial counsel's failure to call two witnesses whose proposed testimony may have contradicted defendant's own testimony was "a strategic decision

which the court will not second guess," and was "well within the wide range of reasonable professional assistance," reasoning that the district court's ruling was "an appropriate application of *Strickland*'s insistence on the 'wide latitude counsel must have in making tactical decisions'") (quoting *Strickland,* 466 U.S. at 689); *see also Philson v. Barbo*, 77 Fed. Appx. 123, 127, 2003 WL 22316930 (3d Cir. Oct.9, 2003) (under "unreasonable determination of the facts" prong of section 2254, counsel's decision not to call two witnesses because of a potential conflict in testimony was "trial strategy" to be afforded "appropriate deference" and did not constitute ineffective assistance of counsel under *Strickland* ); *United States v. Archer,* 59 Fed. Appx. 183, 185, 2003 WL 249089 (9th Cir. Feb.4, 2003) (on appeal from § 2255 denial, court applied Strickland's "strong presumption" of competence to trial counsel's decision not to call a specific witness, holding that this strategic decision did not constitute unreasonable professional performance under *Strickland* ); *United States v. Dejesus,* 57 Fed. Appx. 474, 478 2003 WL 193736 (2nd Cir. Jan.28, 2003) (trial counsel's decision not to call a character witness was grounded in a strategy of preventing the prosecution from attacking defendant's character and therefore was "inherently tactical," "generally should not be disturbed," and was not found to be "objectively unreasonable" under *Strickland* ).

Henderson makes much of the distinction between "at" the crime scene and "near" the crime scene. He contends that Rhodes, Robinson, and Elder would have testified that he was down the street from the gunfight at the times shots were fired, and went to the

14

crime scene only after his brother had been wounded. Placing him "near" the crime scene, he argues, would not have conflicted with a defense strategy which highlighted his absence from the crime scene itself.

Both the PCRA Court and the Superior Court found this argument unpersuasive, noting the inconsistency between defense testimony presented at trial and the testimony offered by these three witnesses. The testimony presented by the defense suggested doubt as to whether Henderson was present at the scene of the crime. Had counsel also presented testimony proving Henderson was present at the scene– albeit not until immediately *after* the shooting– it could have rendered the defense strategy both confusing and unpersuasive. Counsel's choice to assert one theory of innocence is a tactical decision we will not second-guess. We find the state courts' analysis of trial counsel's decision not to call these three witnesses to the stand to be a reasonable application of *Strickland*, based upon a reasonable determination of the facts.

With respect to the fourth witness, James Brooks, the Superior Court found no prejudice stemming from counsel's decision not to call Brooks. We agree. Nothing in Brooks' statement proves or disproves any element of Henderson's defense. Brooks identified defendant Prince Hagwood, and stated that he saw Hagwood fire a weapon. He stated nothing with respect to Henderson's presence or absence at the crime scene. Moreover, he indicated to the police that he was "ducking for cover" during portions of the shooting, suggesting that he missed many of the events which took place.

15

Nothing in Brooks' statement indicates that his testimony would have been particularly helpful to Henderson. Under *Strickland*, prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. To satisfy this test, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

We agree with the state courts that counsel's failure to call Brooks as a witness does not undermine confidence in the outcome of trial, as there is little likelihood that Brooks' vague testimony would have influenced the outcome of trial.

With respect to each of the four witnesses, therefore, we are convinced that counsel was not ineffective for failing to call them to the stand at trial. Accordingly, the Superior Court applied *Strickland* reasonably, and we will affirm.

## V. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court denying Henderson's petition for writ of habeas corpus.