**James C. PARKER, Petitioner,**

v.

**Robert ERCOLE, Respondent.**

**No. 9:05–CV–1418 (DNH).**

United States District Court,
N.D. New York.

Oct. 15, 2008.

James C. Parker, Petitioner pro se.

Andrew M. Cuomo, Office of the Attorney General, Lisa E. Fleischman, Esq., Ass't Attorney General, New York, NY, for Respondent.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

Petitioner James Parker ("Parker," or "petitioner"), is currently incarcerated at the Green Haven Correctional Facility as a result of a 2001 conviction on two counts of first degree sodomy (N.Y. PENAL LAW § 130.50(3)).[1] He seeks a writ of habeas

---

**1.** This section of the Criminal Procedure Law was renamed Criminal Sexual Act in the First Degree in 2003. McKinney's Consol. Laws of New York, L.2003, Ch. 264, § 20.

corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) the trial court should have suppressed the victim's testimony as the fruit of unlawful police conduct in violation of the Fourth, Fifth, and Fourteenth Amendments; (2) trial and appellate counsel were ineffective;[2] (3) he was not afforded a full and fair review on direct appeal of his Fourth Amendment claims; and (4) the trial court erred when it compelled defense counsel to disclose the victim's mental health records to the prosecutor. Dkt. No. 1 at Grounds One through Five; Memorandum of Law ("Mem.") at 1–32; Dkt. No. 16, Traverse, at 1–12. For the reasons that follow, the petition must be denied.

## I. Background

### A. Facts Established at Trial:

According to the testimony adduced at trial, in late 1999 and early 2000, Parker lived at 205 Cleveland Avenue, Apartment 7, in Endicott, New York. Dkt. No. 13, Ex. A, Record on Appeal, Trial Transcript ("Trial Tr."), at 536–47. On March 22, 2000, petitioner approached the victim[3] and some friends, and asked if they would like to play basketball or football. *Id.* at R569–70, 582–83.[4] The victim and his friends agreed to play basketball. After the game, the boys went with petitioner to his apartment. They ate snacks, watched children's movies and played games. *Id.* at R549–50; 570–71. The victim and his sister began going to petitioner's apartment almost every day after school. *Id.* at R549–50; 556–60.

In February 2000, the victim went to petitioner's apartment alone. On one occasion, petitioner pulled down the victim's pants and performed oral sex on him. *Id.* at R572, 590. He told the victim that he loved him. *Id.* at R577. On another occasion near Valentine's Day 2000, petitioner asked the victim to perform oral sex on him, but the victim kissed petitioner's penis instead. *Id.* at R573–75, 590. Petitioner told the victim, "I hope you love me too." *Id.* at R577. The victim continued to visit petitioner at his apartment after these incidents because he thought petitioner would not do these things again. *Id.* at R575, 595.

In March 2000, Parker was moving away and the victim went to his apartment to say goodbye. Petitioner helped him fix his bicycle, and he and the victim then went up to petitioner's apartment. The victim washed his hands and began watching a movie. He was laying on his stomach on the floor propped up on his elbows. *Id.* at R575–76, 593–94. Petitioner pulled down the victim's pants and placed his penis inside the victim's anus. *Id.* at R576. The victim told petitioner to stop, and he did. *Id.* at R578, 594–95. He did not see petitioner again after this incident. *Id.* at R596. The victim testified that he told his sister what had happened, but he was afraid to tell his mother. *Id.* at R595. The victim's sister denied that he told her what happened, testifying that she learned about the incident after petitioner moved. *Id.* at R635.

---

2. Grounds Two and Three each contain claims that Parker's waiver of the right to testify at the suppression hearing was invalid because trial counsel was ineffective. These claims are considered together for the sake of clarity.

3. Since the victim is a minor child, the Court will refer to him by his initials or as "the victim." *See* N.Y. Civ. Rights Law § 50(b).

4. "R" followed by a number refers to the pages of the hearing and trial transcripts included as part of the Record on Appeal presented to the Appellate Division. Dkt. No. 13, Ex. A. The hand-written numbers appear on the top right corner of each page. These documents remain under seal.

On March 24, 2000, Detective Joseph Sculley of the Village of Endicott Police Department interviewed the victim in the presence of his mother and stepfather. Trial Tr. at R578, 616–18. The victim told Detective Sculley about the two sodomy incidents in February 2000. Parker was arrested. *Id.* at R617–18. In an interview with the victim's mother the following Monday, Detective Sculley learned that there had been a third incident in March 2000. *Id.* at R619–21.

On February 22, 2001, an indictment was returned charging Parker with three counts of first degree sodomy. *Id.* at R761–64. Defense counsel filed several pretrial motions (R767–93, 836–69), and numerous hearings were held regarding the admissibility of evidence at trial.

### B. *Suppression Hearing*

The crimes at issue in this petition took place in Endicott, New York. The investigation into these crimes, however, began in Elmira, New York.

On March 22, 2000, Officer Brian Ellis of the Elmira Police Department responded to a radio call from the mother of a ten-year-old boy. Dkt. No. 13, Ex. A, Suppression Transcript, 11/9/00, at R8–9. The woman explained to Officer Ellis that earlier that day, petitioner had approached her son and two friends in Eldridge Park in Elmira, and asked the boys if he could take photographs of them wrestling. *Id.* at R10–12. Petitioner told the boys he was taking the pictures for a class. *Id.* at R11, 14. The boys told Officer Ellis that petitioner would return to the park at 4:00 p.m. the following day to take more photographs. *Id.* at R14. Officer Ellis recorded their descriptions of petitioner and his car. *Id.* at R10–11.

Officer Ellis reported the incident to Sergeant Daren Minch. On March 23, 2000, Officer Ellis, Sergeant Minch, and two other officers parked in various locations in or near the park. *Id.* at R15. At approximately 3:55 p.m., Officer Ellis saw a car matching the description given by the boys, and followed it into the park. *Id.* at R16–17. Officer Ellis activated his emergency lights, stopped petitioner, and ordered him to produce his license and exit the car. *Id.* at R17–18. There was a large quantity of personal property in the car, appearing as if petitioner was moving or living in the car. *Id.* at R18, 28. Parker stated that he had just moved to the area from Florida the previous October, and explained that he was on his way to his brother's house. *Id.* at R18–19.

Parker gave Officer Ellis permission to search his car as Sergeant Minch arrived. *Id.* at R19–20, 28, 39, 45. Officer Ellis opened the driver's side door and saw a black camera case with a camera inside. Petitioner admitted to Sergeant Minch that he had been in the park the day before and had photographed the boys. *Id.* at R45–46. Officer Ellis ran Parker's license, and learned that he had two active warrants for his arrest. *Id.* at R20, 47. After confirming the warrants, Officer Ellis arrested Parker and took him to police headquarters. *Id.* at R21–22, 29, 47. Parker's car was impounded and towed. *Id.* at R29–30, 47.

At Sergeant Minch's direction, Officer Ellis participated in an inventory search of the car. *Id.* at R30–31, 48, 50–52. He found photo albums containing pictures of nude boys and journals that described possible criminal activity. *Id.* at R33–34, 48. The search ceased until an evidence technician arrived, and any items that were potentially incriminating were separated from the rest of Parker's property. *Id.* at R49. The items were transported to the detective division. On the advice of a prosecutor, Sergeant Minch obtained a search warrant before examining the items further. *Id.* at R50–52, 60. Search war-

rant in hand, Sergeant Minch discovered that Parker's journals described sexual activity with boys, and that he possessed pictures of undressed boys, publications by the North American Man–Boy Love Association ("NAMBLA"), and other related items. *Id.* at R50–53.

Later that night, at approximately 8:00 p.m., Detective David Smithers advised petitioner of his Miranda rights and interviewed him. *Id.* at R68–70. Petitioner stated that he was willing to answer questions, and did not ask for an attorney. *Id.* at R70–71, 74. Petitioner admitted that he liked boys between the ages of ten and thirteen, and described a sexual relationship with the victim, a boy in Endicott, New York. *Id.* at R72–73. Detective Smithers transcribed petitioner's statement regarding this relationship. Petitioner signed and dated the statement. *Id.* at R76. Petitioner made two additional statements. *Id.* at R75–78. During the interview, petitioner used the bathroom, declined food, and drank four cans of soda. *Id.* at R80. The first written statement began at approximately 12:59 a.m. on March 24, 2000. The final written statement concluded at approximately 2:45 a.m. *Id.* at R81–83.

After the prosecutor rested, petitioner's attorney told the court that "I've discussed with [petitioner] his right to testify and I believe it's his wish to decline to do so at this time. Is that correct?" Petitioner nodded his head in the affirmative, and counsel added, "[b]ased on my advice, Judge." *Id.* at R93–94.

In a written memorandum submitted after the suppression hearing, defense counsel argued that the police lacked probable cause to stop petitioner. Dkt. No. 13, Ex. E at 3–5. He further argued that as a direct result of the illegal stop, petitioner was taken into custody on two misdemeanor warrants and his car was impounded and searched, leading to the discovery of incriminating evidence. *Id.* at 5–7. Counsel also argued that petitioner's consent to search his car was invalid because the fact that he took pictures of boys did not give rise to reasonable suspicion, and that the inventory search was invalid. *Id.* at 6–8. Counsel challenged the validity of the search warrant on the ground that the items in question had been seized and examined before the police applied for the warrant and probable cause could not be supported by the items to be searched. *Id.* at 9. Counsel further argued that petitioner's statements should also be suppressed as a fruit of the illegal stop because they were the product of illegal detention; and because police used items taken from the car to coerce the statements. *Id.* at 9–11. Finally, counsel argued that since the victim's identity was obtained from a journal taken from petitioner's car during the illegal search, and from petitioner's statements, his testimony should have been suppressed as fruit of the poisonous tree. *Id.* at 12–13.

In a Decision and Order dated February 13, 2001, the trial court granted suppression of all of the challenged evidence except the victim's testimony. Dkt. No. 13, Ex. G, Decision and Order, 2/13/01 (Mathews, J.). It first found that since Officer Ellis did not articulate any basis for stopping petitioner, he may have done so prematurely. The facts known to police were susceptible of innocent interpretation, and were insufficient to provide reasonable suspicion to stop petitioner's car. *Id.* at 7–9. The court further ruled that Officer Ellis had no founded suspicion of criminal activity to justify a request to search the car, making petitioner's consent invalid. *Id.* at 9. Although petitioner's car had been properly impounded due to his arrest on the misdemeanor warrants, the inventory search did not conform to police department policy and was thus invalid. *Id.* at 10–15. The court further ruled that the

search warrant was invalid because it was not supported by probable cause. *Id.* at 15.

The court then suppressed petitioner's confession. It ruled that petitioner's confession was voluntary in the traditional sense because he "freely and openly conferred" with police, there was no evidence that he was mistreated, he was offered food and beverage, and he was given "opportunities to go to the restroom." Dkt. No. 13, Ex. G, at 16. The trial court further noted that the length of the interview did not render the statement inadmissable. The court suppressed the confession, however, because it was the fruit of illegal police conduct, finding "no intervening circumstances between the illegal search and the questioning regarding the incriminating evidence uncovered from [petitioner's] vehicle" [.]. *Id.* at 16–19. In support of its decision, the court stated that "[l]ogic and common sense dictate that the questioning in this case be viewed as a mere extension and exploitation of the illegal police action in searching the car." *Id.* at 18.

Finally, the court concluded that "the trial testimony of the child victim is too far removed and remote to justify its preclusion at the expense of the truth-finding process." *Id.* at 21–22. The court explained that in *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Supreme Court rejected a *per se* rule that live witness testimony is not subject to the exclusionary rule. Instead, the court must consider "whether the causal connection between the illegal conduct and the witness's testimony was sufficiently attenuated to permit its introduction at trial." *Id.* at 20. The court ruled that although the victim may never have reported the abuse if police had not sought him out, that factor was explained by the "unique nature of the crime of child abuse," because those who prey upon children expect that the victim will be "quite reluctant to reveal" abuse. *Id.* The court further found that although the victim was interviewed close in time to petitioner's arrest, the time between the initial interview and his trial testimony would be "quite long." *Id.* Finally, the court found that no further deterrent effect would be served by excluding the victim's testimony. It found that the primary illegality occurred before petitioner was questioned; petitioner's statement followed a complete *Miranda* warning and was voluntary; the Elmira Police Department was not investigating any crimes against the victim and the crime was not within their jurisdiction; and police did not tell petitioner that they had evidence leading to a particular identified victim in Endicott. *Id.* at 21.

### C. *Pretrial Hearings on May 17, 2001*

On May 17, 2001, the trial court addressed other pretrial issues. Petitioner's motion to dismiss on state statutory and federal constitutional speedy trial grounds was denied. Dkt. No. 13, Ex. A at R. 110–14. Petitioner moved to sever counts three and four of the indictment relating to another victim on the ground that while he would testify regarding those incidents, he could not testify regarding the counts involving the victim *Id.* at R114–15. After listening to petitioner's proposed testimony during an in camera hearing, the court reserved decision on the motion to sever. *Id.* at R114–18.

Petitioner's counsel informed the trial court that he had information that the victim was under the care of either a psychologist or psychiatrist, was taking prescribed medication, and was attending special education classes. He asked the prosecutor to obtain and produce this information, or in the alternative, for the court to issue a judicial subpoena duces tecum for the records. *Id.* at R118–23.

The court granted the motion after the victim's mother confirmed that he had bipolar disorder and had been taking medication since he was eight years old. The court further indicated it would review the records in camera to determine what, if anything, should be disclosed to the attorneys. *Id.* at R132–36.

The victim's mother had previously been represented by petitioner's counsel on a welfare fraud charge. *Id.* at R124–27. The trial court questioned her regarding whether she would waive any potential conflict of interest, and advised her that if she testified at trial, counsel could question her about anything in her Public Defender's file. She agreed to waive the conflict, stating that she did not want any further delay in this case. *Id.* at R128–32.

Finally, the trial court reserved decision on the prosecutor's request to question petitioner about his association with NAMBLA and his sexual attraction to boys if he testified. *Id.* at R137–57.

### D. *Pretrial Hearings on May 24, 2001*

On May 24, 2001, the trial court held a pretrial conference. It granted petitioner's motion to sever counts three and four from the indictment. *Id.* at R159–61. The court also ruled that if petitioner testified, and specifically opened the door, he could be cross-examined on his "full and complete admission" regarding the victim. *Id.* at R161. The court also stated that if petitioner testified, it would hold an in camera hearing to discuss the limits on impeachment with regard to petitioner's association with NAMBLA and his sexual attraction to boys. *Id.* at R162–64. With regard to the prosecutor's *Sandoval*[5] application, the court ruled that he could in-

quire as to whether petitioner had been convicted of two felonies, but could not elicit that the convictions were for sodomy and sexual abuse. *Id.* at R164–71.

### E. *Pretrial Hearings on June 1 and 4–5, 2001*

On June 1, 2001, the trial court held an additional pretrial conference. The court stated that it had received and turned over to defense counsel the victim's mental health records, with the admonishment that counsel was not to use anything in the records without the prior approval of the court, but that it had not given a copy to the prosecutor. *Id.* at R185. Defense counsel refused to provide the prosecutor with a copy of the records on the ground that his cross-examination strategy would be revealed. *Id.* at R186–87, 210. Counsel instead requested an *ex parte* hearing during which he would indicate which portions of the record he wanted to use. *Id.* Over the prosecutor's objection, the trial court granted the hearing and defense counsel identified the portions of the mental health records counsel wanted to use. *Id.* at R188–210. The court reserved decision as to whether it would permit the requested lines of inquiry. *Id.* at R210.

The court held a final pretrial conference on June 4, 2001 prior to the commencement of the trial. It denied prosecutor's request to elicit testimony from the victim and his sister that petitioner showed them sketches of nude boys. *Id.* at R215–17. The court then ordered petitioner's counsel, over his and petitioner's objections, to provide the prosecutor with a copy of the victim's mental health records. The prosecutor was in the pro-

---

5. *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). The purpose of a *Sandoval* hearing is to determine the extent to which a defendant may be cross-examined concerning past crimes and mis-

conduct. *Perkins v. McGinnis,* No. 9:05–CV–443, 2008 WL 4372650, at *5 (N.D.N.Y. Sept. 19, 2008)(Hurd, D.J., adopting Report—Recommendation of Bianchini, M.J.).

cess of obtaining them, but the court was concerned he would not receive them in time for trial. *Id.* at R219–20. The court then made a preliminary ruling that counsel could inquire into the portions of the records discussed during the ex parte conference, but that it would permit the prosecutor to move to preclude questioning on objectionable topics. *Id.* at R221. Prior to jury selection on June 5, 2001, the prosecutor moved to preclude cross-examination on several areas mentioned in the records. The court reserved decision. *Id.* at R489–99. It later permitted inquiry into several areas gleaned from the records. *See Id.* at R585, 596–604.

### F. *The Verdict and Post–Conviction Proceedings*

The jury began its deliberations on June 7, 2001, and returned a unanimous verdict which acquitted petitioner of one count of sodomy alleging anal contact and found him guilty of the remaining charges. *Id.* at R728. On October 22, 2001, petitioner was sentenced as a second violent felony offender to two concurrent determinate terms of twenty-two (22) years in prison followed by five years post-release supervision. *Id.* at R739–59.

Petitioner appealed his conviction, arguing that (1) the trial court erred when it refused to suppress the victim's testimony where his identity was discovered as a result of an unlawful search and seizure under the Fourth Amendment; (2) his statutory speedy trial rights were violated; (3) the trial court erred when it required defense counsel to disclose the victim's mental health records to the prosecutor; and (4) the sentence was harsh and excessive. Dkt. No. 13, Ex. K. The Appellate Division, Third Department, affirmed. Dkt. No. 13, Ex. M; *People v. Parker,* 307 A.D.2d 538, 762 N.Y.S.2d 172 (N.Y.App. Div., 3rd Dept.2003). On October 30, 2003, the New York Court of Appeals denied petitioner leave to appeal. Dkt. No. 13,

Ex. P; *People v. Parker,* 100 N.Y.2d 644, 769 N.Y.S.2d 210, 801 N.E.2d 431 (2003). Petitioner, proceeding *pro se,* asked the Court of Appeals to reconsider on the ground that the Appellate Division did not "correctly interpret the facts." Dkt. No. 13, Ex. Q. In a second letter to the Court of Appeals, dated December 4, 2003, petitioner explained that he asked appellate counsel to provide documentation in support of his reconsideration request. *Id.* at Ex. R. The Public Defender's Office forwarded the trial court's decision suppressing evidence to the Court of Appeals in a letter dated December 8, 2003, and reiterated petitioner's request for leave to appeal. *Id.* at Ex. S. On March 29, 2004, the Court of Appeals denied petitioner's application for reconsideration. *Id.* at Ex. T.

On October 14, 2004, petitioner filed a motion to vacate his conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10. Dkt. No. 13, Ex. U. In the motion, petitioner claimed generally that trial counsel was ineffective for failing to argue that the search of his vehicle was done to discover witnesses and evidence against him; and for failing to call petitioner and another witness at the suppression hearing, and the trial court should have suppressed the victim's testimony because it was obtained as a result of the unlawful search of his car and the exploitation of evidence recovered during the search. *Id.* The trial court denied the motion on January 12, 2005. *Id.* at Ex. W. The Appellate Division, Third Department, denied petitioner leave to appeal on April 4, 2005. *Id.* at Ex. Y.

Petitioner filed a writ of error coram nobis on October 28, 2004 in which he alleged that appellate counsel: (1) failed to properly argue his Fourth Amendment claim and (2) failed to timely file for a rehearing in the Appellate Division to address that court's alleged erroneous inter-

pretation of the trial court's findings of fact and rulings of law. Dkt. No. 13, Ex. Z. The writ was denied on December 13, 2004, and the Court of Appeals denied leave to appeal on February 24, 2005. *Id.* at Exs. AA–CC.

## II. *Proceedings in This Court*

Petitioner filed a petition for a writ of habeas corpus on November 14, 2005 and a Memorandum of Law on January 20, 2006. *See* Dkt. Nos. 1, 6. On March 31, 2006, the Office of the Attorney General for the State of New York, acting on respondent's behalf, moved to seal the case. Dkt. No. 8. By Order filed April 12, 2006, the motion to seal the case was granted. On April 17, 2006, Respondent filed a sealed response to the petition along with the relevant state court records. On April 28, 2006, Respondent filed a sealed memorandum of law in opposition to the petition. Petitioner filed a Traverse on May 18, 2006. Dkt. No. 16.

## III. *Discussion*

### A. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state courts adjudicated the merits of the claim and such adjudication either:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006), *cert. denied* 549 U.S. 1215, 127 S.Ct. 1267, 167 L.Ed.2d 92 (2007); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005), *cert. denied*

546 U.S. 884, 126 S.Ct. 225, 163 L.Ed.2d 189 (2005); *Miranda v. Bennett,* 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). In this regard, it is not necessary for the state court to explicitly refer to the particular federal claim or to any federal case law. *See id.* The AEDPA also requires that in any habeas proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda,* 322 F.3d at 178. In that case, "conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*" *Spears v. Greiner,* 459 F.3d 200, 203–04 (2d Cir.2006)(citing *DeBerry,* 403 F.3d at 66–67), *cert. denied* 549 U.S. 1124, 127 S.Ct. 951, 166 L.Ed.2d 725 (2007).

### B. *Suppression of the Victim's Testimony*

Petitioner first claims that the trial court erred when it denied his motion to suppress the victim's testimony at trial. He argues that since police learned the victim's identity after conducting an unlawful search of his car, and after using illegally seized evidence to coerce his statement, the victim's testimony should have been suppressed as a "fruit" of that unlaw-

ful police conduct. Dkt. No. 1, at Ground One (a)-(c); Memorandum of Law ("Mem."), at 1–9.

### 1. *Fourth Amendment:*

Petitioner's arguments are a challenge to the state court's application of the exclusionary rule under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), however, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494–95, 96 S.Ct. 3037. *See also Pina v. Kuhlmann,* 239 F.Supp.2d 285, 289 (E.D.N.Y.2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue."). The Supreme Court has since extended *Stone* to preclude habeas review of a "Fourth Amendment challenge to the introduction of a confession made after an allegedly unlawful arrest." *Glover v. Herbert,* 431 F.Supp.2d 335, 338 (W.D.N.Y. 2006) (citing *Cardwell v. Taylor,* 461 U.S. 571, 572–73, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983)(*per curiam* )(reversing grant of habeas corpus where circuit court of appeals had found that there was an unattenuated causal link between the custodial statements made by respondent and a violation of the Fourth Amendment)).

█ Following *Stone,* review of Fourth Amendment claims in habeas petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment vio-

lations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992). *See also Ramdeo v. Phillips,* No. 04–CV–1157, 2007 WL 1989469, at *27 (E.D.N.Y. Jul. 9, 2007).

New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *See* CPL Article 710; *Capellan,* 975 F.2d at 70 n. 1. Under CPL Article 710, a defendant may move to suppress evidence he claims was unlawfully obtained when he has "reasonable cause to believe that such [evidence] may be offered against him in a criminal action." *Huntley v. Superintendent, Southport Corr. Fac.,* No. 9:00–CV–191, 2007 WL 319846, at *7 (N.D.N.Y. Jan. 30, 2007)(Hurd, D.J., adopting Report and Recommendation of Magistrate Judge Lowe)(quoting CPL § 710.20). Petitioner availed himself of that procedure by making a motion to suppress the victim's testimony on the ground that it was the fruit of an unlawful search and exploitation of that search that led to his confession. The trial court denied the motion, and petitioner appealed that denial. Accordingly, New York State provided corrective procedures to address petitioner's Fourth Amendment claims.

Petitioner argues that his Fourth Amendment claims should not be barred by *Stone v. Powell* because the Appellate Division's findings of fact and conclusions of law are not supported by the record, and were contrary to or an unreasonable application of clearly established Supreme Court precedent. Pet. at Ground Four; Dkt. No. 16, Traverse at 1–3. Petitioner alleges that the Appellate Division (1) erroneously determined that the trial court found the search of his car illegal because the police stopped the car without reason-

able suspicion when, in fact, the trial court ruled the search was invalid because police failed to follow proper inventory search guidelines; (2) wrongfully ruled that the illegal search played no part in the victim's willingness to testify; and (3) erroneously concluded that the inventory search was not conducted to identify potential victims and the identity of the victim was not closely related to the illegal search. Am. Pet. at Ground Four; Mem. at 23–29.

Petitioner apparently seeks *de novo* review of the Appellate Division's factual findings. That relief is expressly forbidden by *Stone*. Further, to the extent that this claim is based upon a disagreement with the state courts' factual findings, they are entitled to a presumption of correctness and petitioner has failed to overcome that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir.2003), *cert. denied* 540 U.S. 1091, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003).

 Nor do petitioner's claims demonstrate an unconscionable breakdown in the state's corrective process. An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F.Supp. 1042, 1050 (E.D.N.Y.1988) (noting such examples as bribing of trial judge, government's knowing use of perjured testimony, or use of torture to extract a guilty plea), *aff'd*, 852 F.2d 59 (2d Cir.1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding"). The focus of the inquiry regarding whether there has been an "unconscionable breakdown" must be on "the existence and application of the corrective procedures themselves" rather than on the "outcome resulting from the application of adequate state court corrective procedures." *Capellan*, 975 F.2d at 71; *see also accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir.2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]"); *Blackshear v. Donnelly*, No. 9:03–CV–450, 2008 WL 150414, at *11 (N.D.N.Y. Jan. 14, 2008)(Kahn, D.J. adopting Report—Recommendation of Bianchini, M.J.)(the proper focus is on the existence and application of the state's corrective procedures and not on the "correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims.").

Here, petitioner took full advantage of the available state process by litigating his Fourth Amendment claims on direct appeal and again in his section 440 motion. His disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977)("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts."), *cert. denied* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *accord, e.g., Watkins v. Perez*, No. 05 Civ. 477, 2007 WL 1344163, *23 (S.D.N.Y. May 7, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in

the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim."). Even if the state courts erred in their analysis of the merits of a Fourth Amendment claim, that is not enough to warrant habeas review. *Steinbergin v. Barkley*, No. 05 Civ. 6565, 2007 WL 1987953, at *4 (S.D.N.Y. Jul.9, 2007)(citing *Capellan*, 975 F.2d at 71).

Finally, petitioner appears to argue that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim in the state courts because trial counsel failed to call petitioner and FBI Agent Mark Thompson to testify at the suppression hearing. Am. Pet. at Grounds Two and Three. That claim is insufficient to establish the sort of unconscionable breakdown necessary for the Court address petitioner's Fourth Amendment claims. *See Crenshaw v. Superintendent, Five Points Corr. Fac.*, 372 F.Supp.2d 361, 370 (W.D.N.Y.2005)(finding a petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown' referred to in *Gates v. Henderson*" that would permit habeas review of a Fourth Amendment claim)(emphasis in original); *Shaw v. Scully*, 654 F.Supp. 859, (S.D.N.Y. 1987)("Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure ... courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown.") (citations omitted); *Allah v. Le Fevre*, 623 F.Supp. 987, 991–92 (S.D.N.Y.1985)(rejecting a habeas claim that ineffective assistance of counsel can

constitute an "unconscionable breakdown", stating that "it is plain from the majority opinion in *Gates* that the Court of Appeals had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review.").[6]

Accordingly, *Stone* precludes *de novo* review of state court fact-finding on a Fourth Amendment issue. Petitioner's Fourth Amendment claims are barred by *Stone* and *Cardwell* and are dismissed.

### 2. Fifth Amendment

Petitioner also argues that the state court erred when it determined that his statement to police was voluntary "for Fifth and Fourteenth Amendment purposes." Am. Pet. at Ground One (a). Petitioner argues that the trial court failed to consider the "impact of the police coercive use of illegally seized evidence in eliciting incriminating response[s]" from him, and that the court failed to properly consider this "element of the interrogation" under the Fifth Amendment's "right to be free from compelled self-incrimination." Mem. at 3–4. Petitioner seems to argue that the trial court would have suppressed the victim's testimony if it had determined that his statements were coerced and thus involuntary under the Fifth Amendment.

Petitioner never argued that the victim's testimony was the product of a coerced and involuntary statement under the Fifth Amendment. Petitioner consistently argued that the police illegally seized items from his car and exploited their contents to elicit his confession, and that as a result, police learned the identity of the victim and obtained his testimony in violation of

---

**6.** The ineffectiveness of counsel in connection with petitioner's Fourth Amendment claims will be considered independently *infra*. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)(rejecting argu-

ments that *Stone v. Powell* bars Sixth Amendment ineffective assistance of counsel claims premised on counsel's failure to raise Fourth Amendment objections).

the Fourth Amendment. For example, on direct appeal, petitioner argued that the victim's testimony was "obtained as a result of an unlawful search and seizure" under the Fourth Amendment. Dkt. No. 13, Ex. K, at 11–19. He claimed that the drawings, journals and photographs taken from his car were on the table in the detective's office, and the interviewing detective had been briefed on their contents. Petitioner asserted that "it is irrelevant whether Detective Smithers told [petitioner] that he knew about [the victim]" because Smithers "used the implied threat of the materials on the table to get [petitioner] to tell him what he wanted to know," and that under those circumstances, petitioner had not volunteered the information on the victim's identity. *Id.* at 16–17. Thus, petitioner maintained that the victim's "testimony was gained through exploitation of the unlawful search through the interrogation of [petitioner]" and should be suppressed as "fruit of the poisonous tree." *Id.* at 19.

Petitioner invoked the Fifth Amendment in his section 440 motion. Dkt. No. 13, Ex. U, ¶ 33 ("I contend that the search of my belongings at the Detective Bureau was nothing but a ruse intended to exploit the illegally seized items to pressure me to inculpate myself in violation of my Fifth Amendment protections."). But petitioner's actual argument implicated the Fourth Amendment. *Id.* at ¶¶ 26–34. Indeed, he argued that his statements were not "sufficiently a product of free will to break for Fourth Amendment purposes, the casual [sic] connection between the illegality and the confession." *Id.* at ¶ 6(c) (quoting *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). *See, e.g. United States v. Orozco,* No. 89–CR–934, 1990 WL 118287 at *7 (E.D.N.Y.

Aug.3, 1990) ("[W]hen agents question a defendant about evidence or a crime related thereto, where such evidence was seized illegally, they have obviously exploited the illegal search. Any ensuing confession is therefore deemed a "fruit" of the illegal search i.e., the "poisonous tree," and must be suppressed.")(quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The trial court did not perceive petitioner's section 440 claim to be a new claim under the Fifth Amendment. Instead, it perceived the claim as a challenge to the victim's testimony under the Fourth Amendment, and denied the claim because it had been raised and decided on direct appeal. Dkt. No. 13, Ex. W, at 2 (citing CPL § 440.10(2)(a)).

 Since petitioner's claim has always been presented under the Fourth Amendment, the Court must determine whether petitioner's Fifth Amendment challenge has been properly raised in this action.[7] The law is well-settled that prior to bringing a petition for habeas corpus pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with respect to each claim presented in his federal application for habeas relief. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The petitioner must "fairly present" his claims in each appropriate state court, alerting the court to the federal nature of the claim. *Baldwin,* 541 U.S. at 29, 124 S.Ct. 1347 (quoting *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)). The petitioner must have informed the state court of both the factual and legal premises of the claims that he is attempting to bring in federal court. *Id.* In order for a petitioner to "invoke one complete round of the State's established appellate

---

7. *See Lurie v. Wittner,* 228 F.3d 113, 123 (2d Cir.2000) (court may consider exhaustion *sua sponte,* absent express waiver by respondent),

cert. denied 532 U.S. 943, 121 S.Ct. 1404, 149 L.Ed.2d 347 (2001).

review process," he must first appeal his conviction to the Appellate Division and then must seek further review of the conviction by applying for leave to appeal to the New York Court of Appeals. *Smith v. Duncan,* 411 F.3d 340, 345 (2d Cir.2005) (quoting *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005), *cert. denied* 544 U.S. 1025, 125 S.Ct. 1996, 161 L.Ed.2d 868 (2005)). Applicants for leave to appeal must submit briefs and other documents to the Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *Smith,* 411 F.3d at 345. If petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to these claims, they are "deemed" exhausted but are also procedurally defaulted. *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citing *Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991)), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

■ The briefs considered by the state courts present this issue as part of a Fourth Amendment claim. The state courts viewed the inquiry as a question regarding the exploitation of illegally seized evidence under the Fourth Amendment. The Appellate Division, the last court to look at the merits of petitioner's claims, decided the issue based on a Fourth Amendment question regarding the attenuation doctrine in *United States v. Ceccolini* and *People v. McGrath,* 46 N.Y.2d 12, 412 N.Y.S.2d 801, 385 N.E.2d 541 (1978). *People v. Parker,* 762 N.Y.S.2d at 172. No Fifth Amendment claim was raised as a separate, federally based claim in any state court. The issue simply has not been fairly presented to the New York courts, and has not been exhausted.

Petitioner cannot now file a direct appeal with the Third Department in order to advance this claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001). Further, "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Id.* (citing CPL § 440.10(2)(c)). *Bossett,* 41 F.3d at 829. Any attempt to raise the claim in a second section 440 motion would be met by this procedural bar. This claim is therefore "deemed exhausted" but procedurally defaulted. *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 170 (2d Cir.2000); *Senor v. Greiner,* No. 00–CV–5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept.18, 2002).

■ A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or establish that failure of the court to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 748–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546, *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.[8]

---

8. It should be noted, however, that "[a]ttor- ney ignorance or inadvertence is not 'cause'

*Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Id.* at 488, 106 S.Ct. 2639.

 Petitioner has not alleged or proven cause for his failure to exhaust this claim, and has never argued that his appellate counsel rendered ineffective assistance by failing to challenge the admissibility of the victim's testimony under the Fifth Amendment in the state courts. Since petitioner has not established cause, the Court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless *both* cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.1985); *Staley v. Greiner*, No. 01–CV–6165, 2003 WL 470568, at *7 (S.N.D.Y. Feb. 6, 2003)(citing *Stepney* ); *Pou v. Keane*, 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.). Petitioner also has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted. *See Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Accordingly, the procedural default bars federal review of petitioner's Fifth Amendment claim.

### C. *Ineffective Assistance of Trial Counsel:*

Petitioner argues that trial counsel was ineffective for: (1) failing to argue at the suppression hearing that the inventory search of petitioner's car was a "pretext for investigation in violation of the search warrant requirement"; (2) failing to call petitioner and FBI agent Mark Thompson as witnesses at the suppression hearing; and (3) failing to apprise petitioner of the "relevant circumstances and likely consequences" of testifying at the suppression hearing. Petitioner's argument appears to be that but for these errors, the testimony of the victim would have been suppressed. Petitioner also takes issue with the trial court's finding, when denying his section 440 motion, that this claim was raised and rejected on direct appeal. Finally, petitioner argues that the trial court erred when it denied his 440 motion without a hearing.

In denying petitioner's section 440 motion, the trial court first found that since petitioner raised these claims on direct appeal, and the Appellate Division determined that he "received meaningful representation,"[9] his claims of trial counsel inef-

---

because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546 (quoting *Murray*, 477 U.S. at 488, 106 S.Ct. 2639).

9. The interplay between the well-accepted standard for judging an attorney's performance under the Sixth Amendment and the prevailing test under New York law, particularly with respect to the prejudice prong of the controlling analysis, is an issue which has received increasing attention, with recent federal decisions reflecting some degree of tension between the two points of view. *See, e.g., Henry v. Poole*, 409 F.3d 48 (2d Cir.2005), *cert. denied*, 547 U.S. 1040, 126 S.Ct. 1622, 164 L.Ed.2d 334 (2006). Prior to rendering its decision in *Henry*, the Second Circuit had previously held that the "meaningful representation" test applied by the New York courts is not "contrary to" the governing federal standards, for purposes of the AEDPA, even though the prejudice prong of its analysis is significantly less reaching than under its federal counterpart. *See, e.g., Henry*, 409 F.3d at 70 (citing *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir.2001); *Loliscio v. Goord*, 263 F.3d 178, 192–93 (2d Cir.2001); *Eze v. Senkowski*, 321 F.3d 110, 122–24 (2d Cir.2003)). Whether that viewpoint will stand the test of time, particularly in light of the Supreme Court's decision in *Williams*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), is subject to some doubt. *See Henry*, 409 F.3d at 68–72.

fectiveness were barred under CPL § 440.10(2)(a). As petitioner and respondent correctly point out, the trial court was apparently mistaken in its belief that petitioner raised a claim of ineffective assistance of counsel on direct appeal. *See* Resp't Mem. at 38. The court also ruled, however, that petitioner's claims of ineffectiveness were either refuted by the record or "tactical decisions" that warranted no relief. Dkt. No. 13, Ex. W, at 2. The trial court's rejection of these claims was contrary to or an unreasonable application of clearly established Supreme Court precedent.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. To establish a violation of his right to the effective assistance of counsel, petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.*).[10] There is a strong presumption that counsel rendered adequate assistance as courts give high deference to counsel, and petitioner "must overcome the presumption that the challenged action 'might be considered sound trial strategy.'" *Gatto v. Hoke,* 809 F.Supp. 1030, 1038 (E.D.N.Y.1992) (quot-

ing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052), *aff'd mem.,* 986 F.2d 500 (2d Cir. 1992); *see also Jackson v. Conway,* 448 F.Supp.2d 484, 492 (W.D.N.Y.2006). A reviewing court must determine not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether, under *Strickland,* it was "objectively unreasonable." *Mosby v. Senkowski,* 470 F.3d 515, 519 (2d Cir.2006), *cert. denied* — U.S. ——, 128 S.Ct. 75, 169 L.Ed.2d 56 (2007).

Here, trial counsel successfully moved to suppress physical evidence and petitioner's statements. Counsel successfully moved to sever the charges in this case from a second, unrelated matter charging similar conduct. Hearing Transcript, 5/17/01, at R115–118, 159–61. Counsel's arguments resulted in the so-called *Sandoval* compromise, permitting the prosecutor to elicit from petitioner, had he testified, only that he had prior felony convictions without identifying that those convictions involved the sexual abuse of minor children. R164–71. Counsel successfully moved to cross-examine the victim regarding his mental health records, and prevented the prosecutor from using sketches or movies recovered from his car in his direct case. R172–78, 185–88, 202–10, 215–17, 221–27, 483–514. Counsel vigorously cross-examined witnesses at trial and called a witness who contradicted the victim's testimony that he told his mother of the alleged abuse. R546–47, 562–63, 582–604, 608, 619–22, 635. Finally, counsel's efforts resulted in acquittal on one count of the indictment. *Id.* at 738.

### 1. *Failure to argue that the inventory search was a pretext*

But petitioner argues that counsel was ineffective for failing to argue that the

---

**10.** In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in Strickland qualifies as "clearly established Federal law [.]"" 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

inventory search was "merely a pretext for investigation in violation of the search warrant requirement." Petitioner claims that had counsel made this argument, and had the trial court ruled that the police searched his car with the intent to locate potential victims and evidence against him, the victim's testimony would have been suppressed.

The hearing record establishes, however, that counsel *did* question Officer Ellis and Sergeant Minch regarding their intent in searching the car, and challenged whether the proffered explanation—to conduct an inventory—was valid by exploring the procedures used. *Id.* at R30–36, 55–62. When counsel finished questioning Ellis, the trial court asked Ellis what his primary purpose was when inventorying the car. Ellis responded, "[t]o follow regulations." *Id.* at R38–39. Ellis also told the court, in response to its questions, that once petitioner's car was impounded, he was obligated to conduct an inventory search. *Id.* at R39. Then, in his memorandum of law in support of suppression, counsel argued that the petitioner's car had been illegally seized, impounded and searched and the recovery of evidence from the car, including the victim's identity, was the "exploitation of the illegal stop and thus tainted." Dkt. No. 13, Ex. E at 6–8, 12–13. Counsel also argued that the "so-called inventory search" was improper because it failed to comport with police department policy, all contents of the car were not inventoried, and police looked inside closed containers, including photo albums, and accordingly, all recovered evidence must be suppressed. *Id.* at 8.

The record is apparent that although counsel did not use the specific words petitioner would have chosen to argue that the inventory search was improper, the court was aware of and rejected this argument, finding that the inventory search procedures had not been properly followed and

that the police acted unlawfully in searching the car. Dkt. No. 13, Ex. G, at 10–15. Counsel chose to focus on what he believed were the strongest arguments in favor of suppression, and was largely successful. *See Shields v. Duncan,* No. 02–CV–6713, 2003 WL 22957008, at *15 (E.D.N.Y. Oct.20, 2003) (counsel's decision to concede lawfulness of the petitioner's arrest and the voluntariness of his statements at the close of the suppression hearing were "tactically sound" and did not amount to ineffective assistance of counsel). It is difficult to determine how, on this record, counsel could be considered ineffective for not raising an alternative argument in support of suppression.

 In any event, petitioner has not shown that had counsel argued this claim in the specific terminology he thinks is appropriate, the victim's testimony would have been suppressed. The police motive in conducting the search at issue is only one factor relevant to the determination of whether the victim's testimony should have been suppressed under the Fourth Amendment. *United States v. Ceccolini,* 435 U.S. 268, 275–78, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). As the Supreme Court has explained, the fact that the witness's identity was gleaned from an unconstitutional search "is of no evidentiary significance, *per se,* since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give." *Ceccolini,* 435 U.S. at 277, 98 S.Ct. 1054. "The relevant constitutional question is 'whether the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint.'" *Mosby,* 470 F.3d at 515 (quoting *Ceccolini,* 435 U.S. at 273–74, 98 S.Ct. 1054) (internal quotation marks omitted).

 In addition to the motivation for the search, courts must also consider "the degree of free will" of the witness in testifying; the length of the "road" between the illegal search and initial police contact with the witness, and between the initial contact and the witness's trial testimony; and whether the purpose of the exclusionary rule—to deter official misconduct—would be served by suppression of the testimony. *Ceccolini*, 435 U.S. at 273–80, 98 S.Ct. 1054. If the witness's cooperation is the product of free will and not induced by police misconduct, "the purpose of the exclusionary rule would not be served by disallowing the testimony." *United States v. Leonardi*, 623 F.2d 746, 751 (2d Cir.1980) (citing *Ceccolini*), *cert. denied* 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980). The Supreme Court has made clear that the exclusionary rule "should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness[.]" *Ceccolini*, 435 U.S. at 280, 98 S.Ct. 1054.

Here, the court did not base its decision to permit the victim to testify on only one factor. Instead, it weighed all of the factors under *Ceccolini* and concluded that the "deterrent impact of the exclusionary rule is most effective when applied against police who, while investigating a particular reported crime in their jurisdiction, intentionally engage in conduct they know or should know is illegal to gain an advantage in that investigation." Dkt. No. 13, Ex. G at 22. The court explained that here, since the petitioner's statement and the physical evidence against him were already suppressed, "to preclude the trial testimony of this victim would have little or no detrimental impact on the police department involved and little deterrent effect on law enforcement in general." *Id.* It further held that the victim's testimony was "too far removed and remote to justify its pre-

clusion at the expense of the truth-finding process." *Id.* In light of these findings, petitioner's claim that the court would have suppressed the victim's testimony had counsel argued that the search of his car was done to identify witnesses against him is speculative and unsupported by the record. Petitioner's claim of ineffectiveness on this ground is denied.

### 2. *Failure to call witnesses:*

Petitioner also alleges that counsel was ineffective at the suppression hearing because he did not call him or FBI agent Mark Thompson to testify. Specifically, petitioner claims that he would have testified that FBI Agent Mark Thompson "was the first official to broach the subject of petitioner's relationships with youths in the village of Endicott, New York, by gesturing to a notebook journal illegally taken by police from his car, and stating, "We know all about [the victim] . . . in Endicott!'" Dkt. No. 1, Mem. at 13, 16–20. He further asserts that had he so testified, the trial court would not have concluded that there was:

no evidence before the court that any item illegally seized from the defendant's vehicle would actually identify [the victim] as a victim of the defendant. It is clear that Det. Smithers never told the defendant during questioning that they had evidence linking him to a particular victim, [The victim], who lived in Endicott.

*Id.* at 13–14 (quoting Decision and Order at 21–22).

 Courts in this Circuit have made clear that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys[.]" *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98

L.Ed.2d 382 (1987); *see, e.g., United States v. DeJesus,* 57 Fed.Appx. 474, 478 (2d Cir. 2003) ("A trial counsel's 'decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.' Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed." Counsel's decision not to call a particular witness was grounded in strategy and not deficient, "even though [defendant] requested that she do so and provided her with contact information for potential witnesses.") (citation omitted), *cert. denied,* 538 U.S. 1047, 123 S.Ct. 2110, 155 L.Ed.2d 1088 (2003). *See Farr v. Greiner,* No. 01–CR–6921, 2007 WL 1094160, at *32 (E.D.N.Y. Apr.10, 2007)("Counsel's decision to interview or call witnesses is a strategic one entitled to a strong presumption of reasonableness.") (citing *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990)). "[W]hether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation." *United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000), *cert. denied* 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001).

As the section 440 court noted, petitioner "has submitted no additional nonrecord facts or documentation to support his claim that he was not afforded a full and fair suppression hearing" and noted that "[b]are allegations are insufficient." Dkt. No. 13, Ex. U, at 1–2. The only support for petitioner's claim regarding what his testimony—and that of Agent Thompson would have been—is his own self-serving statement. *See United States v. Wilson,* 216 F.3d 1074, 2000 WL 778021, at *3 (2d Cir.2000)(summary order) (petitioner's self-serving affidavit and absence of affidavits from allegedly uncontacted witnesses did not establish ineffective assistance); *United States v. Vargas,* 920 F.2d 167, 170 (2d Cir.1990) (petitioner's affidavit making allegations in "conclusory fashion" failed to demonstrate that counsel's decision not to call witness was unreasonable), *cert. denied,* 502 U.S. 826, 112 S.Ct. 93, 116 L.Ed.2d 64 (1991).

■■■ Moreover, petitioner has failed to show that counsel's decision not to call witnesses was not sound strategy. The trial court's findings show it was well aware of the interplay between the use of illegally seized evidence to obtain petitioner's confession, and from there the victim's identity. It is true that the trial court noted there was no evidence that "any item illegally seized from the defendant's vehicle would actually identify [the victim] as a victim of the defendant," and that Detective Smithers "never told the defendant during the questioning that they had evidence linking him to a particular victim who lived in Endicott." Dkt. No. 13, Ex. G, at 21–22. The court also noted, however, that Detective Smithers had been briefed on the contents of the items recovered from petitioner's car, that he spoke to him about those items, and asked petitioner if he had "relations with anyone in Endicott and [petitioner] related that he had had a relationship with [the victim] while he lived in Endicott." *Id.* at 5. In fact, the court framed the issue as follows:

> The final issue to be resolved is whether the court should preclude the trial testimony of [the victim] on the theory that the police would never have known that he was a victim of the crimes charged except for the illegal questioning of the defendant.

*Id.* at 16. In fact, the court noted that petitioner "was functioning under the impact of knowing that the police had or were going through all his photos, journals, and diary. He was caught.... To deny the obvious now would be futile." *Id.*

In any event, even if petitioner and Agent Thompson had testified, and the trial court credited their testimony, the court would still have had to determine whether, under *all* of the factors set forth in *Ceccolini*, the victim's testimony should be suppressed. Petitioner's claim that had the court heard from Agent Thompson that he first broached the subject of potential victims in Endicott, and from petitioner that police told him they already knew about the victim, the result would be different is not supported by the record. The state court's rejection of this claim was not "objectively unreasonable" under *Strickland*, and it is denied. *See Mosby*, 470 F.3d at 519.

### 3. *Failure to advise of consequences of testifying at the suppression hearing:*

Finally, in Grounds Two and Three of his amended petition, petitioner alleges that he was not given the opportunity to testify at the suppression hearing in violation of his due process rights. Petitioner further argues that although he waived the right to testify, the waiver was invalid because he was not advised by counsel or the trial court that his testimony could not be used in the prosecutor's direct case, or that he could testify at the suppression hearing without "adverse consequences." *See* Traverse, at 6.

Petitioner raised these claims in his section 440 motion. Dkt. No. 13, Ex. U. There, as here, the heart of his claim was that trial counsel failed to properly advise him of the ramifications of testifying at the suppression hearing. *Id.* at ¶ 36 (arguing that he suffered prejudice "when Defense Counsel advised me to waive my right to testify at the suppression hearing" because counsel informed him he would not be testifying without also informing him that his testimony could not be used in the prosecutor's direct case). Petitioner specifically stated that his claim was "best

approached in terms of whether, if the advice had been different, it would have affected the outcome of the hearing." *Id.* (quoting *Hemingway v. Henderson*, 754 F.Supp. 296, 302 (E.D.N.Y.1991)). The trial court viewed these claims as part of petitioner's attack on the effectiveness of counsel and denied relief. Dkt. No. 13, Ex. W. *See also* Resp't Mem. at 33, n. 9. That determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

 As an initial matter, it is unclear whether there is a constitutional right to testify at a suppression hearing. A criminal defendant has a constitutional right to testify on his own behalf, *Rock v. Arkansas*, 483 U.S. 44, 49–51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), and trial counsel must advise the defendant "about the benefits and hazards" associated with doing so. *Rega v. United States*, 263 F.3d 18, 21 (2d Cir.2001)(quoting *Brown v. Artuz*, 124 F.3d 73, 78–79 (2d Cir.1997)), *cert. denied* 534 U.S. 1096, 122 S.Ct. 847, 151 L.Ed.2d 725 (2002). The Second Circuit has held:

> Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter.

*Brown*, 124 F.3d at 79. These decisions were rendered, however, in the context of a right to testify at trial. The Supreme Court has not, however, decided that defendants have a constitutional right to testify at pre-trial suppression hearings. *See Gomez v. Duncan*, No. 02 Civ. 0846, 2004 WL 119360, at *33 (S.D.N.Y. Jan. 27, 2004). Several district courts have suggested that they do not. *See, e.g., Gomez,*

2004 WL 119360, at *33 & n. 42 (citing *Narvaez v. United States*, 97 Civ. 8745, 1998 WL 255429 at *5 n. 6 (S.D.N.Y. May 19, 1998) ("It seems likely to this Court that the decision to put the defendant on the stand in a pretrial evidentiary hearing has no special constitutional status beyond the right to present evidence on one's own behalf and is thus committed, as are all decisions about which witnesses to call or not call, to trial counsel's professional judgment. The distinction is important because if the defendant has a personal right to testify, the question under the performance prong of Strickland is whether counsel informed the defendant of that right, whereas if there is no such personal right the question becomes the more difficult standard of whether the decision not to call the defendant was within the range of sound professional judgment. Given the disposition of this issue on the prejudice prong, the Court need not decide the issue.") (citation omitted)); *Hemingway*, 754 F.Supp. at 302 ("There is a difference between testifying at trial that involves a determination of guilt or innocence and testifying at a preliminary hearing the purpose of which is to keep evidence from 'the trier of guilt or innocence for reasons wholly apart from enhancing the reliability of verdicts.'"). Thus, to the extent that petitioner's claim is premised upon a constitutional right to testify at the suppression hearing, the state court's denial of that claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Id.*

 Even if petitioner had a constitutional right to testify at the suppression hearing, his claim warrants no relief. "[W]here a defendant did not testify at a suppression hearing because he relied on the advice of counsel, the issue is best approached in terms of whether the advice was reasonable and whether, if the advice had been different, it would have affected the outcome of the hearing." *Heming-*

*way*, 754 F.Supp. at 296 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir.1990) ("Because [the defendant] argues only that counsel provided ineffective assistance by advising him not to testify on his own behalf, our finding that the advice was not unreasonable disposes of his claim.")). The Second Circuit has held that "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify...." *Brown*, 124 F.3d at 79. Although the Second Circuit has stated that a petitioner must be advised that he could have testified at a suppression hearing without "adverse consequences," *Walker v. Wilmot*, 603 F.2d 1038, 1042 (2d Cir.1979), *cert. denied* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), the court did not define that phrase. It seems clear that a defendant should be advised that the prosecution could not use his suppression hearing testimony against him as substantive evidence of his guilt in the criminal trial on the merits. *See Salvucci*, 448 U.S. at 88, 100 S.Ct. 2547 (citing *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). But as the Supreme Court has noted, a defendant's suppression hearing testimony could likely be used for impeachment purposes if he took the stand and testified to the contrary. *See United States v. Salvucci*, 448 U.S. 83, 88 n. 8, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)(noting, without deciding, that "[a] number of courts considering the question [of whether a defendant's suppression hearing testimony could be used to impeach a defendant at trial] have held that such testimony is admissible as evidence of impeachment.") (citations omitted). *See also United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir.1995)("Prior inconsistent suppression hearing testimony may properly be used to impeach a defendant during

trial."). A prosecutor might also elicit information during cross-examination of a defendant at a suppression hearing that "'might be helpful to the prosecutor in developing its case or deciding its trial strategy.'" *Hemingway*, 754 F.Supp. at 301 (quoting *Salvucci*, 448 U.S. at 96, 100 S.Ct. 2547 (Marshall, J., dissenting)).

■■■ This is not a case, however, where petitioner's counsel failed to advise him of the right to testify or of the attendant consequences. *See Walker*, 603 F.2d at 1042 ("We believe that unless Walker himself was specifically and fully advised by counsel or the state judge of his right to testify without adverse consequences and chose not to do so, his failure should not bar a federal hearing."). The record shows that Parker was aware of his right to testify at the suppression hearing, and declined to do so. At the close of the People's proof, the following exchange took place:

The Court: Defense have any witnesses?

Defense Counsel: Judge, we have no witnesses to call at this time. I've discussed with [petitioner] his right to testify and I believe it's his wish to decline to do so at this time. Is that correct?

Petitioner: [Nods head].

Defense Counsel: Based on my advice, Judge.

The Court: All right.

Dkt. No. 13, Ex. A, at R93–94. Petitioner nodded in agreement with defense counsel when counsel told the court that it was petitioner's decision not to testify. He has provided no evidence, other than his bald statements, that he believed counsel had taken the decision out of his hands. Moreover, petitioner's Traverse contradicts his claim that counsel failed to advise him of the consequences of testifying. In the Traverse, petitioner states that he spoke with counsel regarding whether to testify, and that counsel informed him that his testimony could be used at trial. Traverse at 7. The Second Circuit has held exactly that. *See Jaswal*, 47 F.3d at 543. Petitioner's contradictory statements, unsupported by the record or by any other evidence, do not warrant habeas relief. *See Gomez*, 2004 WL 119360, at *33 (rejecting a self-serving claim that counsel told petitioner he could not testify, and noting that the claim was unsupported by the record or by any affidavit from counsel).

■■■ Finally, petitioner's argument that the trial court was obligated to advise him of the consequences of waiving his right to testify at the suppression hearing is equally unavailing. The Second Circuit has stated that there is "no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right," and "the judge need not intervene when counsel announces that the defendant rests and the defendant has not testified." *Brown*, 124 F.3d at 79. Here, counsel represented that petitioner did not want to testify at the suppression hearing and when petitioner nodded in agreement, the court was under no obligation to make further inquiry. This claim is denied.

### 4. *Trial Court's denial of the Section 440 motion without a hearing*

■■■ Finally, petitioner argues that the trial court erred when it failed to hold an evidentiary hearing before deciding his CPL 440 motion. Pet. at Grounds Two and Four. State prisoners, however, have no federal constitutional right to post-conviction proceedings in state court. *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Thus, petitioner's claim, an alleged procedural error by the trial court in deciding his Section 440 motion, is not cognizable on

habeas review. *Ferrer v. Superintendent,* No. 9:05–CV–1010, 2008 WL 2967633, at *11 (N.D.N.Y. Jul. 25, 2008)(Mordue, C.J.)(" '[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' ")(quoting *Falas v. Phillips,* No. 03 Civ. 4839, 2004 WL 1730289, at *13 (S.D.N.Y. Aug. 3, 2004), adopted in 2005 WL 756886 (S.D.N.Y. Apr. 1, 2005)); see *Parker v. New York,* No. 05 Civ. 3347, 2006 WL 864272, at *5 (S.D.N.Y. Apr. 5, 2006) ("[P]rocedural errors in state post-conviction proceedings are not cognizable on federal habeas review.")(quoting *Guzman v. Couture,* No. 99 Civ. 11316, 2003 WL 165746, at* 13–14 (S.D.N.Y. Jan. 22, 2003)(claim that post-conviction court failed to consider written objections submitted to another judge in violation of petitioner's rights to effective assistance of counsel, due process and equal protection was not cognizable on federal habeas review); *Jones v. Duncan,* 162 F.Supp.2d 204, 217 (S.D.N.Y. Apr. 3, 2001)("[H]abeas relief is not available to redress alleged procedural errors in state post-conviction proceedings", and denying habeas relief on claim that trial court failed to hold an evidentiary hearing on post-conviction motions)(quoting *Franza v. Stinson,* 58 F.Supp.2d 124, 151 (S.D.N.Y.1999)).

In any event, under New York law, a trial court may deny a Section 440.10 motion without a hearing if the moving papers do not allege any ground constituting legal basis for the motion or if factual allegations that are essential to support the motion are "contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence," and under the facts and circumstances of the case, there is "no reasonable possibility that such allegation is true." See CPL § 440.30(4)(a). The trial court denied the motion after finding that the allegations therein did not warrant relief and were "refuted by the record." Dkt. No. 13, Ex. W at 1–2. Its actions were based on, and in compliance with, state statutory law. The trial court's failure to hold a hearing before denying petitioner's section 440 motion is thus insufficient to constitute a denial of his constitutional rights.

### D. *Effectiveness of Appellate Counsel*

Petitioner also argues that appellate counsel was ineffective for: (1) failing to properly argue his Fourth Amendment claim; (2) failing to argue that the trial court's application of federal constitutional law when it permitted the victim to testify was erroneous; and (3) failing to timely file for rehearing in the Appellate Division to address its erroneous interpretation of the trial court's findings of fact and rulings of law. Pet. at Ground Three; Mem. at 15–23. Since the Appellate Division considered this claim and rejected it (Dkt. No. 13, Ex. AA), the deferential AEDPA standard of review applies. *Sellan,* 261 F.3d at 314 (ineffective assistance of counsel claim deemed adjudicated on the merits where Appellate Division denied petitioner's writ of *coram nobis* and there was no basis to conclude that the claim was rejected on non-substantive grounds).

 To prevail on a claim that appellate counsel was ineffective, a petitioner must demonstrate that: (1) appellate counsel's performance fell below an objective standard of professional reasonableness; and (2) but for appellate counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Smith v. Robbins,* 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Strickland,* 466 U.S. at .694, 104 S.Ct. 2052. When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues

while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994), *cert. denied* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). A petitioner must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument, regardless of merit, urged by the petitioner. *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Sellan,* 261 F.3d at 317.

Analyzed under these standards, the record fully supports the Appellate Division's rejection of petitioner's claim that appellate counsel was ineffective. Appellate counsel, who had also served as trial counsel, filed a thirty-two page brief, together with a record on appeal that was several hundred pages in length, in which he advanced four claims he believed had the greatest chance of success. Dkt. No. 13, Exs. A, K. Counsel also sought leave to appeal to the Court of Appeals on each issue raised on direct appeal. *Id.* at Exs. O, S.

Nonetheless, Parker claims that appellate counsel should have argued that the trial court improperly applied *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) when it suppressed physical evidence and his confessions but not the victim's testimony. Mem. at 19. He also claims that counsel should have argued that the trial court unreasonably applied *United States v. Ceccolini.* Parker's claims are belied by the record. The majority of appellate counsel's brief was dedicated to the trial court's application of *Wong Sun* and *Ceccolini.* Dkt. No. 13,

Ex. K at 11–20. After summarizing these cases, as well as relevant state caselaw, counsel argued that the trial court erred when it found attenuating factors to permit the admissibility of the victim's testimony because "there is a direct relationship between the police illegality and the obtaining of the witness's testimony." Dkt. No. 13, Ex. K, at 16. Counsel cannot be ineffective for raising the very arguments petitioner claims he omitted.

 Parker further claims that appellate counsel failed to timely file for rehearing in the Appellate Division to address its erroneous interpretation of the trial court's findings of fact and rulings of law. Specifically, he alleges that counsel should have challenged the Appellate Division's finding that "County Court ruled that the search of [petitioner's] vehicle was illegal because the police stopped it without reasonable suspicion." *Parker,* 762 N.Y.S.2d at 173. But the trial court did find that Officer Ellis improperly requested consent to search Parker's vehicle when he stopped it in the park because he lacked founded or reasonable suspicion of criminal activity. Dkt. No. 13, Ex. G, at 9–10. Appellate counsel likely recognized that Parker's complaint that the Appellate Division made an erroneous finding was without merit. Further, counsel likely recognized that the suppression of the victim's testimony did not rest on any one particular fact, but rather upon consideration of all of the factors set forth in *Ceccolini.* Appellate counsel cannot be found to have rendered ineffective assistance by failing to assert a meritless claim in a motion for reargument. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appel-

late advocacy.") (quoting *Jones,* 463 U.S. at 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *Torres v. McGrath,* 407 F.Supp.2d 551, 562 (S.D.N.Y.2006) (" 'Failure to make a meritless argument does not amount to ineffective assistance.' ") (quoting *United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999), *cert. denied,* 531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000)); *Lopez v. Fischer,* No. 05 CIV.2558, 2006 WL 2996548, at *12 (S.D.N.Y. Oct. 16, 2006) ("[P]etitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation below an objective standard of reasonableness, nor can petitioner show that had these claims been presented on appeal, his outcome would have been any different."); *Melenciano v. Walsh,* No. 02 CIV.9593, 2005 WL 768591, at *8 (S.D.N.Y. Apr.6, 2005) ("Where the underlying claim is without merit, the claim of ineffective assistance of counsel for not raising the issue during the trial is, likewise, meritless.") (citations omitted).

■ Finally, although petitioner argues that the Appellate Division failed to fully consider his claims because his writ of error coram nobis was denied without comment is without merit. State courts are not required to state specific reasons for the denial of a federal claim. The state court need "only dispose of the [p]etitioner's federal claims on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio,* 269 F.3d at 93–94(citing *Sellan,* 261 F.3d at 312). Federal habeas review is governed by the holding of the state court and not "the form of its articulation." *Washington v. Schriver,* 90 F.Supp.2d 384, 386 (S.D.N.Y.2000) (citing *Arizona v. Evans,* 514 U.S. 1, 7–8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (warning against the "unsatisfactory and intrusive practice of requiring state courts to clarify

their decisions" by citing to federal precedents), *aff'd* 255 F.3d 45 (2d Cir.2001)).

In sum, there is nothing to suggest that the appellate brief filed by counsel was deficient. Accordingly, petitioner's ineffectiveness claim challenging the quality of counsel's appellate arguments must fail. *E.g., Gonzalez v. Duncan,* No. 00–CV–1857, 2001 WL 726985, at *6 (E.D.N.Y. June 22, 2001) (denying habeas claim alleging ineffective assistance of appellate counsel where appellate brief reveals sound appellate strategy on part of attorney); *Davis v. Keane,* No. 99 CV 71, 2001 WL 13288, at *6 (E.D.N.Y. Jan. 4, 2001) (same), *aff'd,* 45 Fed.Appx. 31 (2d Cir.2002)(summary order). This claim is therefore dismissed.

### E. *Failure of the state court to give a full and fair consideration to his claims*

In Ground Four of his amended petition, petitioner alleges that he was not afforded a "full and fair review" on direct appeal of his Fourth Amendment claims because the Appellate Division determinations of fact are "contrary to, and involved a mischaracterization of the trial court's findings of fact and rulings of law". Pet. at Ground Four; Mem. at 23–29.

■ As an initial matter, although petitioner raises these arguments in the context of a denial of his appellate rights, the substance of this claim appears to be that the Appellate Division erred when denying his motion to suppress the victim's testimony. Petitioner "cannot evade *Stone [v. Powell]* by characterizing his claim as a denial of appellate rights." *Steinbergin v. Barkley,* No. 05 Civ. 6565, 2007 WL 1987953, at *4 n. 2 (S.D.N.Y. July 9, 2007)(citing *LiPuma v. Comm'r,* 560 F.2d 84, 93 (2d Cir.1977) (concluding that although petitioner had not characterized his claim as one arising under the Fourth

Amendment, *Stone* applied "because at the heart of this case lies an alleged Fourth Amendment violation"); *Herrera v. Kelly,* 667 F.Supp. 963, 970 (E.D.N.Y.1987) ("[E]ven strong disagreement with a state court's reading of the fourth amendment will not suffice to circumvent *Stone,*" and "[a]ttempts to find other names" for a Fourth Amendment claim "will not make it any more cognizable [on habeas review].")). Thus, to the extent that petitioner's claim is aimed at challenging the state courts' suppression rulings, it is barred under *Stone.*

 In any event, there is no due process right to an appeal, but "when a state does provide for an appeal, that appeal must accord with due process...." *Mitchell v. Woods,* No. 03–CV–19, 2007 WL 2021903, at *6 (N.D.N.Y. July 6, 2007)(Sharpe, J., adopting Report–Recommendation of Bianchini, M.J.) (quoting *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990)). New York affords criminal defendants with an appeal as of right. As a result, a defendant convicted in New York has procedural due process rights when appealing a conviction, including the right to counsel on appeal and the requirement that an appeal be decided within a reasonable time. *See Taveras v. Smith,* 463 F.3d 141, 146–47 (2d Cir.2006); *Simmons,* 898 F.2d at 868. Petitioner fails to cite any authority that supports a "substantive due process challenge to the reasoning process of the appellate court." *Mitchell,* 2008 WL 202193, at *6 ("In other words, there does not appear to be any constitutional right to challenge the depth or adequacy of state court appellate review on due process grounds.").[11] One court in this Circuit has rejected a petitioner's claim that he was denied due process because the Appellate Division's decision was "vague and insufficient." *Galvin v. Kelly,* 79 F.Supp.2d 265, 273–74 (W.D.N.Y.2000).

 The fact that "a state appellate court may issue a one word denial of a defendant's claim without offending the Constitution, *Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001), also indicates

**11.** Petitioner cites *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) and *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991) in support of his argument that the "Supreme Court granted relief on just such an independent claim that the petitioner was denied meaningful appellate review." Traverse at 10. *Townsend* did not address the issue of whether Fourth Amendment claims were cognizable on habeas review and does not set forth the parameters of what constitutes a "full and fair" hearing in such cases, nor did it establish an independent substantive due process claim in the context of reviewing a state court's findings of fact and conclusions of law. Rather, the aspect of *Townsend* which the Supreme Court singled out in *Stone v. Powell* was its holding that

"a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual de-

termination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

372 U.S. at 313, 83 S.Ct. 745. *Townsend* is inapposite to petitioner's claim because, as noted above, he was afforded an adequate hearing and his simple disagreement with the state court's findings does not constitute an unconscionable breakdown in the state's corrective process. In *Parker,* the issue was "what effect the Florida courts gave to the evidence petitioner presented in mitigation of his death sentence ..." 498 U.S. at 310, 111 S.Ct. 731. It also did not establish an independent substantive due process habeas claim based upon a disagreement with the result reached by the state courts. These cases are thus inapposite to petitioner's claim.

that petitioner cannot assert a due process claim based upon an alleged defect in the appellate review process." *Mitchell*, 2007 WL 2021903, at *6. Under the AEDPA, the focus of the habeas court is on the decision of the state appeals court and not on the particular reasoning employed. *Id.* Expanding substantive due process review to include petitioner's claim would be "inconsistent with the limited purposes of habeas review." *Id.* at *6 (citing *Bentley v. Scully,* 41 F.3d 818, 823–824 (2d Cir.1994) ("Direct review is the principle avenue for challenging a conviction ... [and when this process] 'comes to an end, a presumption of finality and legality attaches to the conviction and sentence'") (quoting *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983))). "[W]hile federal habeas proceedings are important to ensure that constitutional rights are observed, their role is 'secondary and limited.'" *Id.* (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

Finally, the habeas corpus standard under § 2254 provides petitioner with a method to obtain a review of the state court's adjudication to determine whether it was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or whether it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court. Since this Court has reviewed the state court's decisions pursuant to the standard set forth in section 2254, any independent claim of substantive due process is denied.

### F. *The Victim's Mental Health Records:*

Petitioner next argues that the trial court improperly forced trial counsel to turn over the victim's mental health records to the prosecutor because the order was outside the scope of permissible dis-covery and because it violated his due process rights to present a defense by revealing counsel's trial strategy. Ground Five.

Parker raised this claim on direct appeal. The Appellate Division rejected it, finding that "County Court properly noted that both parties had a right to subpoena those records." *Parker,* 762 N.Y.S.2d at 173. It further found that, once the trial court learned that the prosecutor was in the process of obtaining the same records, "the order to defense counsel to provide those materials was grounded upon the court's discretionary authority to prevent the delay of a scheduled trial" under CPL 610.25(1). *Id.* It further held that since Parker failed to "specify the manner in which he was prejudiced" by the trial court's ruling, it found no abuse of discretion. *Id.* Those rulings were not contrary to or an unreasonable application of clearly established Supreme Court precedent.

It is well-settled that a habeas court may review only those claims based on federal law. *See* 28 U.S.C. § 2254(a); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Thus, to the extent that petitioner is claiming an error of New York state's discovery rules, that claim is not cognizable on habeas review unless the error amounts to a violation of petitioner's due process rights. *See Chellel v. Miller,* No. 04–CV–1285, 2008 WL 3930556, at *5 (E.D.N.Y. Aug. 21, 2008)("The requirement to give notice of testimony that includes a prior identification comes from section 710.30, a state discovery rule. Thus, the claim is not cognizable under § 2254 unless the failure to provide notice amounts to a violation of petitioner's due process rights."); *Adams v. Greiner,* No. 02–CV–6328, 2004 WL 912085, at *7 (S.D.N.Y. Apr.29, 2004)("To the extent that Adams claims violations of state discovery rules, such as the rule of

*People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), such claims are not cognizable on habeas corpus, since they are not based on federal constitutional law.").

■ Petitioner also has not demonstrated that the trial court's order to provide the prosecutor with a copy of the victim's records was an abuse of discretion under New York state's discovery rules. Under New York law, "CPL § 610.25(1) makes clear that where the District Attorney seeks trial evidence the subpoena should be made returnable to the court, which has 'the right to possession of the subpoenaed evidence.' It is for the court, not the prosecutor, to determine where subpoenaed materials should be deposited, as well as any disputes regarding production." *People v. Natal,* 75 N.Y.2d 379, 553 N.Y.S.2d 650, 553 N.E.2d 239, 242 (1990). Accordingly, as the Appellate Division found, the trial court properly exercised its discretion when it ordered counsel to supply the prosecutor with a copy of the records.

■ Petitioner's argument that the trial court's discovery ruling violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution by depriving him of the right to present a defense is similarly without merit. A defendant's right to present a complete defense through the introduction of relevant evidence is not absolute. The right to present evidence " 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). "A writ of habeas corpus should issue only where the petitioner can show that the alleged error deprived [him] of a fundamentally fair trial." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983) (citing

*Chambers v. Mississippi,* 410 U.S. 284, 302–03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)), *cert. denied* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983).

■ Petitioner cannot meet his burden because the record reveals that his right to present a defense was not violated. In a pretrial conference held on May 17, 2001, counsel requested that a subpoena duces tecum be issued by the court to obtain the victim's mental health records. Dkt. No. 13, Ex. A, at R118–23. The trial court agreed to sign subpoenas for the records and that upon receipt, it would review the records in camera to decide whether to provide the records to counsel. *Id.* at R134. The court further cautioned that while it might reveal the records to both counsel, it would hold another hearing before permitting the use of the records before a jury. *Id.* at R136. In a hearing held on May 24, 2001, the court reiterated that it would provide the records to defense counsel for review, but that did not necessarily mean the records could be used at trial. *Id.* at R172–75.

On June 1, 2001, the trial court supplied the mental health records to defense counsel with the admonition that the records were not to be used at trial without prior approval of the court. *Id.* at R185–86. The prosecutor objected and requested a copy of the records. When defense counsel refused to provide the prosecutor with a copy, the court indicated it would sign subpoenas for the prosecutor to obtain the records. *Id.* at R186–88. The trial court then held an ex parte hearing during which defense counsel pointed out areas of inquiry in the records he wanted to explore on cross-examination of the victim at trial. *Id.* at R202–10. The court reserved its decision.

On June 4, 2001, the first day of trial, the trial court informed defense counsel that he could inquire into the areas he

indicated during the ex parte hearing, but that the prosecutor would be permitted to make an application to preclude questioning. *Id.* at R219–21. When the prosecutor indicated that he was in the process of getting the records but had not yet done so, the trial court ordered defense counsel to give a copy of the records to the prosecutor. R219–20. Counsel expressed a concern that his defense would be revealed if the areas he intended to cross-examine the victim on were revealed. *Id.* at R485. The court agreed, stating that:

> it would be unfair for me to direct the defense to now specifically tell you precisely what it is that [counsel] intend to use from those records, and did not require counsel to show the prosecutor the specific areas he intended to cover on cross-examination. I think that the defense has a right to try its own case in the way that it desires to do so provided the court engages in a procedure designed to ensure that the competing interests here are protected.

*Id.* at R486–87. The prosecutor argued for preclusion of only two areas counsel intended to explore—the victim's alleged abuse of a five-year-old girl and the notation that the victim heard voices. The court precluded inquiry only into the alleged incident involving the five-year old. None of the other subjects defense counsel intended to explore were revealed to the prosecutor, counsel was permitted to inquire into several portions of the records, and was able to gain concessions on cross-examination of the victim based upon information in the records. *Id.* at R. 585–604. On this record, Parker has failed to show that the trial court's order to provide the victim's mental health records to the prosecutor violated his right to present a defense. This claim is therefore denied.

### IV. *Certificate of Appealability*

For the reasons set forth above, the petition for a writ of habeas corpus filed by petitioner will be dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000), *cert. denied* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000), a certificate of appealability will not be issued.

Therefore, it is

ORDERED that

1. The petition for a writ of *habeas corpus* is DISMISSED;

2. A certificate of appealability is DENIED; and

3. The Clerk of the Court is directed to file judgment accordingly, serve a copy of this Order on the petitioner by regular mail, and close the file.

IT IS SO ORDERED.